1178

## WASHINGTON NATIONAL INS. CO., *v.* DWIGHT S. MEEKS

5-5972                482 S.W. 2d 618

### Opinion delivered July 17 1972

*Streett & Plunkett,* for appellants.

*Brown, Compton & Prewett,* for appellee.

FRANK HOLT Justice. Appellee brought this action to enforce monthly payments of indemnity benefits provided for in a disability insurance policy issued to him by appellant. The policy provided for monthly payments in the amount of $1,000 per month with a maximum duration of 60 months so long as there is complete disability on the part of the insured due to injury or sickness to perform each and every duty pertaining to his occupation. Based upon a jury verdict, a judgment for the full amount of the insurance benefits plus a statutory penalty of 12% and a $7,500 attorney's fee was entered in appellee's favor. For reversal of the judgment appellant first contends that the evidence is insufficient to sustain a finding of total disability.

The policy application was signed by appellee on January 10, 1968, and appellant's agent listed appellee's occupation as "owner of building, commercial, rent houses." Of February 22, 1968, appellee suffered a gunshot wound to his left foot. Subsequently, the wound developed gangrene and it became necessary to amputate the foot above the ankle. Appellant paid insurance benefits to appellee until September 30, 1968. At that time appellee became able to walk on an artificial limb without the aid of crutches, and appellant contended that appellee was no longer disabled and discontinued payments. Appellant argues on appeal that appellee's business acumen and management abilities were not adversely affected by the injury. Therefore, as soon as he was "up and about," he could carry on with his normal occupation.

According to appellee, at the time the accident occurred, he was building and improving houses and commercial buildings for lease or sale. In addition he and his wife owned commercial buildings, a motel, and an apartment building. He was able to do plumbing, painting, and general repairs to his property. This included walking, climbing, lifting, and carrying objects even when walking. There was nothing about his physical condition which disabled him before the accident. During the average working day, "there seemed to be something to do, either plumbing to repair, or a house to paint, or a roof to fix, or furniture to be moved. . . In my work it was necessary to climb almost every day. It's necessary to climb a ladder to get on top of a building to repair a roof or replace a water cooler pump, or it's necessary to climb steps to replace furniture. . . . " There was "always climbing, carrying, putting on dolly such things as regrigerators and TVs" and bending and lifting all the time. If anything went wrong, he would repair it if he could. Usually the only repairs which he was unable to perform related to electrical maintenance. His back bothers him, and he has frequent pain as a result of the amputation. He often falls when walking. At the time of the trial, the appellee was wearing his third artificial leg. He demonstrated to the jury how it prevented him from performing past activities in his occupation.

Whether appellee's injury rendered him completely disabled to perform his occupation is a question of fact for the jury. *Franklin Life Ins. Co.* v. *Burgess*, 219 Ark. 834, 245 S. W. 2d 210, (1952). In the case at bar, the court, without objection, instructed the jury that the term "total disability" in the policy "does not mean a state of absolute helplessness. But it means that if there was any substantial part of the material acts necessary to be done pertaining to his occupation that the insured could not perform in the usual and customary way, he would be disabled within the meaning of the policy." When we consider the evidence and all reasonable inferences deducible therefrom in the light most favorable to the appellee, as we must do on appeal, we are of the view that there is substantial evidence to support the jury's finding that the appellee's injury disabled him to the extent he could not continue performing the substantial and material acts pertaining to his occupation in the usual and customary way. *Lumbermens Mut. Ins. Co.* v. *Cooper*, 245 Ark. 81, 431 S. W. 2d 256 (1968), *Baldwin* v. *Wingfield*, 191 Ark. 129, 85 S.W. 2d 689 (1935).

Appellant, also, asserts for reversal that the evidence is insufficient to support the amount of compensation awarded. Appellant relies upon the policy limitation provision which provides as abstracted:

"If the loss of time benefits shall exceed the monthly earnings for the period of two years immediately preceding a disability for which claim is made, which ever is the greater, Washington National will be liable only for such proportionate amount of such benefits under this as the amount of such monthly earnings or such average monthly earnings of the insured bears to the monthly benefits and for the return of such part of the premiums paid during such two years as shall exceed the pro rata amount of the premiums for the benefits actually paid hereunder; but this shall not operate to reduce the monthly benefits payable below the sum of $200."

Appellee sought and was awarded $38,364.16, which included compensation at the rate of $1,000 per month on total disability, plus return of the premium. It is appellant's contention that "there is no showing that ap-

pellee had earnings or average earnings of $1,000.00 per month during the two years immediately preceding his injury and that such is necessary to support the verdict rendered herein [based on total disability at $1,000.00 per month]." Appellee is the sole provider for his family. He derived his earnings from building and selling houses, rental income from commercial buildings and in the operation of a washateria and motel. He spent in excess of $12,000 per year for family necessities. Appellee paid a policy premium which assured him a $1,000. disability income.

According to appellee's income tax returns, he had a gross income of $99,143.30 for the year 1966 and $97,811.-80 for 1967. During the year 1968 (the year of the accident), his gross income was $25,535.36. In 1969, his gross income was $16,468.34 and in 1970 $4,670.95. Appellee's certified public accountant, who prepared the tax returns for these years, testified with respect to these tax returns for these years. He corroborated appellee's testimony that he was earning in excess of $1,000 per month during the two years preceding his injury. As indicated, it is well established that on appeal in determining the sufficiency of the evidence, we consider only the appellee's testimony or that which is most favorable to him. *Baldwin* v *Wingfield, supra.* We hold there is substantial evidence to support the jury's finding on this issue of appellee's earning.

Appellant, also, contends that the court erred in refusing its instruction which contained the exact language of the policy relative to the amount of payment due under the policy. Appellant avers that the two instructions given by the court did not contain two important issues: "[1] whether or not appellee was totally disabled and [2] what amount of relief was he entitled to under the policy." We cannot agree. Suffice it to say that in reviewing the policy language we are of the view that the two pertinent instructions given by the court incorporated the essential elements which are contained in the policy and that the jury had a clear understanding of the issues presented.

Affirmed.