Bill LINDSEY et al *v.* Charles WATTS et al

81-55                                          621 S.W. 2d 679

Supreme Court of Arkansas
Opinion delivered September 21, 1981
[Rehearing denied October 26, 1981.]

*Felver A. Rowell, Jr.,* for appellants.

*Matthews & Sanders*, by: *Roy Gene Sanders*, for appellees.

FRANK HOLT, Justice. This appeal results from the jury's finding, based upon interrogatories, that the appellants committed or aided and abetted in an unjustifiable assault and battery upon appellees Mike and Charles Watts. Mike was awarded $5,000 compensatory damages and $5,000 punitive damages and Charles $55,000 compensatory damages and $5,000 punitive damages.

Appellants first contend there is no substantial evidence to support the jury's verdict and, therefore, the court should have granted appellants's motion for a directed verdict upon appellees' counterclaim. A directed verdict is proper only when there is no substantial evidence from which the jurors, as reasonable persons, could possibly find the issues for the party opposing the motion. *Arkansas Kraft Corporation* v. *Johnson, Adm'n*, 257 Ark. 629, 519 S.W. 2d 74 (1975); *Miller* v. *Tipton*, 272 Ark. 1, 611 S.W. 2d 764 (1981). In determining if substantial evidence exists, an examination of the evidence must be made in the light most favorable to the parties opposing the motion. *Missouri Pacific R.R. C.* v. *Purdy et al*, 263 Ark. 654, 567 S.W. 2d 92 (1978); *Page* v. *Boyd-Bilt, Inc.*, 246 Ark. 352, 438 S.W. 2d 307 (1969). If there is any substantial evidence to support the finding of the jury, we will affirm. *Green* v. *Harrington*, 253 Ark. 496, 487 S.W. 2d 612 (1972). There, we said that upon appellate review, it must appear "there is no reasonable probability that the incident occurred as found" by the factfinder. It is also well established that upon appeal we consider only the evidence of the appellee or that portion of all the evidence which is most favorable to the appellee. *Thrifty Rent-A-Car* v. *Jeffrey*, 257 Ark. 904, 520 S.W. 2d 304 (1975); *Baldwin* v. *Wingfield*, 191 Ark. 129, 85 S.W. 2d 689 (1935); and *Washington National Insurance* v. *Meeks*, 252 Ark. 1178, 482 S.W. 2d 618 (1972).

A dispute arose between the appellants and the appellees, adjacent landowners, concerning the use and repair of a cattle guard on appellee Mike Watts' land. Appellants had an easement to cross appellees' property on a road passing

over the cattle guard. An earlier dispute resulted in a chancery court order directing that the appellants remove spikes they had placed along the cattle guard which prevented a milk truck from entering appellees' dairy farm. However, after appellants removed the spikes, they placed wooden posts at the corners of the cattle guard which would impede the milk truck. They, also, had filled the cattle guard with rock sufficiently to impair its use as a cattle guard. Later the same day, when appellants attempted to replace the wooden posts with steel posts, appellees went to investigate and an argument ensued. A shooting erupted resulting in appellants Bill Lindsey, his son Tommy, and appellees Mike and his brother Charles Watts suffering gunshot wounds.

The evidence is in dispute as to the aggressors. The appellants' version was that they fired upon the appellees in self-defense after the appellees started shooting at them. However, the appellees' version, which the jury apparently accepted, was that when they approached the appellants, who were erecting the metal posts at the cattle guard, appellee Mike Watts informed appellant Bill Lindsey that he was not supposed to do anything to the cattle guard. Thereupon, appellant Tommy Lindsey confronted Mike Watts with a sledgehammer, shaking the hammer in his face. As Mike Watts retreated, Tommy Lindsey advanced and made threatening gestures with the sledgehammer. When Mike Watts had backed up to his truck, he pulled a shotgun from the front seat, at which point Tommy Lindsey stopped. Bill Lindsey, standing near his truck at the cattle guard, pointed a rifle at Mike Watts, who turned toward Bill Lindsey. There was evidence that Bill Lindsey shot at Mike Watts, who then returned the fire which wounded Lindsey. Mike Watts then jumped behind his truck and was fired upon by Tommy Lindsey. Watts fired one more shot which wounded Tommy Lindsey. Charles Watts, who was unarmed, and his brother Mike then retreated from the scene. There was evidence that all of the appellants, Bill Lindsey, his wife Marie, his sons Tommy and Billy aided and abetted or were all shooting at the Wattses with rifles and a pistol as the Wattses retreated. Mike Watts was shot in the back approximately 180 yards from the cattle guard. His brother

Charles, unarmed, suffered a wound to his right eye as he was prone on the ground looking back toward the appellants who were approximately 200 yards from him at the cattle guard.

It was for the jury to resolve the conflicts in the evidence, the credibility of the witnesses and the reasonable probability of the occurrence in determining whether the appellants committed an unjustifiable assault and battery upon the appellees. When we view the evidence which is most favorable to the appellees, as we must do on appeal, we hold there is ample substantial evidence to support the jury's verdict.

Appellants next assert that the trial court erred in not granting their motion for a mistrial because of the asserted misconduct of a member of the jury. One of the appellants observed appellees' attorney talking to a juror during a recess. The trial court conducted a hearing which revealed that a jury was reading an exhibit which had been introduced in evidence the previous day. The juror remarked to the appellees' attorney that the exhibit had not been shown to the jury. The attorney responded that the jury could "take all of the exhibits" with it if it desired. The court refused to grant a mistrial. In the absence of a manifest abuse of the wide latitude of discretion which is accorded to the trial courts in acting on a motion for a mistrial, we do not reverse. *Garner* v. *Finch*, 272 Ark. 151, 612 S.W. 2d 304 (1981). Here, appellants have not demonstrated abuse of discretion.

Appellants contend that the damages awarded were excessive since they appear to have been given under the influence of passion or prejudice. Further, the testimony is insufficient, particularly in the absence of medical evidence. Mike Watts was awarded $5,000 compensatory and $5,000 punitive damages. There was evidence, as previously discussed, that Mike Watts was shot in the back as he retreated from the scene of the argument; he was hospitalized for three days, his medical bills approximated $570; he was disabled for more than three months during which time it was necessary to employ others to help operate his dairy farm. He produced checks totaling $750 as a part of that expense.

Charles Watts, who was awarded $5,000 punitive damages and $55,000 compensatory damages, was shot while he was unarmed and prone on the ground after fleeing the scene. As a result of the wound, he was hospitalized for eight days with medical bills totaling approximately $3,000; his right eye was removed and replaced with an artificial one; and, further there was damage to an ear drum, sinus cavity and nerve damage to his mouth and teeth.

A jury's award will not be set aside unless it is so disproportionate to the evidence that it shocks the conscience of the court or demonstrates passion or prejudice. *Mustang Electrical Services, Inc.* v. *Nipper*, 272 Ark. 263, 613 S.W. 2d 397 (1981). Here, we cannot say the awards by the jury are excessive nor can we agree with appellant that the evidence is insubstantial because of insufficient medical evidence.

Affirmed.