Larry BARNETT, The Farmers Insurance Group of
Companies, and The Truck Insurance Exchange *v.*
ARKANSAS TRANSPORT COMPANY, Inc.

90-29                                        798 S.W.2d 79

Supreme Court of Arkansas
Opinion delivered November 5, 1990
[Supplemental Opinion on Denial of Rehearing
December 17, 1990.]

492

*Eichenbaum, Scott, Miller, Files & Heister, P.A.*, by: *Frank S. Hamlin* and *Christopher O. Parker*, for appellants.

*Friday, Eldredge & Clark*, by: *William M. Griffin III*, for appellee.

JACK HOLT, JR., Chief Justice. This case involves an insurance contract issued by the appellant, The Truck Insurance Exchange (Exchange), through its agent, Larry Barnett, to the appellee, The Arkansas Transport Company, Inc. (Transport), for the period between September 10, 1985, through September 10, 1986. The Exchange is a member company of, and owned by, the appellant, The Farmer Insurance Group of Companies.

In its complaint, Transport initially asserted claims of

breach of contract, deceit, fraudulent misrepresentation, negligence, and bad faith breach of contract. On June 1, 1989, the jury awarded Transport $115,251.00 on its claim of breach of contract. The trial court entered its judgment on October 24, 1989, which incorporated the jury award of $115,251.00 and also included $34,497.00 in attorney's fees and $691.69 as reimbursement for costs to Transport.

The appellants allege two points of error on appeal: 1) that the trial court erred in refusing to allow them to cross-examine James E. Siegler, Jr., concerning the Arkansas Transportation Commission's authorization of Transport's supplemental insurance tariff, and 2) that the trial court erred in awarding Transport attorney's fees in the amount of $34,497.00. Additionally, Transport cross-appeals and argues that the trial court erred in directing a verdict in favor of the appellants on the issue of fraud and submission of punitive damages.

We find no merit in any of the parties' claims and affirm.

Transport first purchased a gross receipts liability policy from the Exchange through its agent, Larry Barnett, for the period September 10, 1984, to September 10, 1985. Transport, under this gross receipts policy, paid a monthly premium that was calculated as a specified percentage of the gross receipts that it had earned during the previous month. Before the expiration of this policy, in March and August 1985, the Exchange's commercial managers recognized the desirability of increased premiums for this special type of insurance coverage, but no action was taken to implement an increase.

On September 9, 1985, Barnett confirmed in writing to Transport that its renewal premium rate from September 10, 1985, to September 10, 1986, would be $4.79 per $100.00 of gross receipts. Subsequently, on December 24, 1985, the Exchange notified Transport that its premium rate would be changed on February 1, 1986, to $7.19 per $100.00 of gross receipts, an increase of $2.40. Transport paid the increased premium to the Exchange from February 1 to September 10, 1986, ostensibly under protest.

During this period, Transport was granted a $4.90 tariff rate increase from the Arkansas Transportation Commission (Com-

mission) on January 17, 1986, that went into effect on March 1, 1986.

At trial, James E. Siegler, Jr., Transport's Chief Operating Officer, testified on direct examination in pertinent part as follows:

Q    Could you tell the ladies and gentlemen of the jury why it is important, as a trucking company, that you have a rate that you know you are going to have for a year.

A    I'll try. In our business, we are a regulated common carrier, and by regulated means different state agencies and government agencies regulate our business, they tell us exactly what we can haul, when we can haul it and how much we can haul it for. Now, it's true that we have had some deregulation in the United States recently, but still rates are regulated. Now, on ICC basis, the rates are pretty much loose enough that you can file a rate and within so many days, it will be approved, it's just a stamp of approval. However, we have business in Arkansas, Louisiana and Tennessee that the states have also governed their tariffs and we have to apply for a rate increase, and that application form sometimes takes as long as six months, you have to file it, you have to have a hearing on it, and, after the hearing, they'll wait and give their decision on that rate increase, and sometimes they grant the increase, sometimes they don't but insurance cost is such a large expense in our business that we need to have some type of finger on what our costs are going to be in the future, whether we need a rate increase ourselves, so that's the reason why it's so important that we know what our insurance costs are going to be, at least for a certain period of time in advance.

On cross-examination, Mr. Siegler also testified in pertinent part as follows:

Q    Mr. Siegler, when you received this rate increase in February of '86, the one that's the subject of this lawsuit, did you, in fact, pass any of this along to your customers?

A    We have tried to pass most of it to our customers, but we haven't been able to do 100% of it.

The appellants then attempted to introduce a certified copy of Transport's approved tariffs on file with the Commission. Transport objected on the basis of relevancy, and the trial court denied the introduction of the document.

The appellants claim first that the trial court erred in refusing to allow them to cross-examine Mr. Siegler concerning the Commission's authorization of Transport's supplemental insurance tariff. They argue that the proffered document contradicts his testimony and that the proffered document is relevant.

The appellants contend that Mr. Siegler's testimony, that an application for a tariff rate increase "sometimes takes as long as six months," was an affirmative statement that it had taken six months for Transport to implement a tariff increase in this case. Read in context, the patently misconstrued interpretation advocated by the appellants is inaccurate because Mr. Siegler's testimony is clear and plain that a tariff rate increase *"sometimes takes as long as six months."* The proffered document simply would not have contradicted this statement or have affected Mr. Siegler's credibility as a witness, as the tariff rate increase was approved on January 17, 1986, and went into effect on March 1, 1986, approximately one and a half months later. Then, too, Transport was doing business in Louisiana and Tennessee, which also governed their tariffs.

The appellants also state that this document was relevant, in response to Transport's objection of irrelevancy. We noted in *Washington Nat'l Ins. Co.* v. *Meeks*, 249 Ark. 73, 458 S.W.2d 135, *appeal after remand* 252 Ark. 1178, 482 S.W.2d 618 (1970), that where an inquiry is pertinent to the main issue and within the proper scope of cross-examination to wring disclosures which might present a view more favorable to the cross-examiner, no question of relevancy is involved. However, an offer of proof is necessary where the relevancy of materiality of the answer is not apparent. Additionally, rulings on the relevancy of evidence are discretionary with the trial court, and we do not reverse absent an abuse of discretion. *Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985) (citing *Kellensworth* v. *State*, 278 Ark. 261, 644 S.W.2d 933 (1983)).

In this case, the main issue before the trial court was whether the appellants had breached an insurance contract with

Transport. Any inquiry as to Transport's conveyance of the increased insurance premium to its customers is not readily apparent or relevant to this issue. The appellants argue that Transport had a duty to mitigate its damages to them and that the tariff rate increase was relevant in that regard. However, the appellants again misconstrue any duty that Transport might have had to mitigate its damages; Transport's duty to the appellants to mitigate its damages would have been limited to actions relating to its increased insurance premium under its contract. Any alleged recoupment of this cost through a tariff rate increase from Transport's various customers in Arkansas, Louisianna, and Tennessee as a result of increased premiums is, at best, purely speculative and not relevant to whether or not the insurance contract was breached and an increased premium rate charged by the appellants.

■ Contained in the record is an in chambers discussion, labeled by the court reporter as "off the record," in which the trial court made a reference to the collateral source rule. The appellants now attempt to claim in their briefs that this comment by the trial court served as the basis for the trial court's ruling. However, the record clearly reflects that the trial court based its ruling on the irrelevancy of the tariff rate increase and that the reference to the collateral source rule was made after the trial court had made its ruling. Thus, the trial court did not rely on the rule for its action, and any discussion of the rule is inapplicable to this point of error.

■ The relevancy or materiality of the tariff rate increase not being apparent, the appellants' failure to make an offer of proof precludes us from speculating on this issue. Consequently, we can not say that the trial court abused its discretion in this matter.

Next, the appellants assert that the trial court erred in awarding Transport attorney's fees in the amount of $34,497.00. Ark. Code Ann. § 16-22-308 (Supp. 1989) provides for attorney's fees in certain civil actions and provides as follows:

> In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or

breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney fee to be assessed by the court and collected as costs.

Our general rule relating to attorney's fees is well established and is that attorney's fees are not allowed except when expressly provided for by statute. *Damron* v. *University Estates, Phase II, Inc.,* 295 Ark. 533, 750 S.W.2d 402 (1988) (citing *Harper* v. *Wheatley Implement Co.,* 278 Ark. 27, 643 S.W.2d 537 (1982)).

In this case, the jury returned a verdict in favor of Transport on June 1, 1989. Section 16-22-308 was revised to include the term "breach of contract" and was made effective by Act 800 of 1989 on July 3, 1989. The trial court subsequently entered its judgment on October 24, 1989. The appellants claim, while recognizing the court of appeals' decision in *City of Fayetteville* v. *Bibb*, 30 Ark. App. 31, 781 S.W.2d 493 (1989), that it is improper to retroactively apply a statute that has the effect of declaring fees to be an element of consequential damages.

In *Bibb*, the court of appeals discussed the issue as follows:

In *Harrison v. Matthews*, 235 Ark. 915, 362 S.W.2d 704 (1962), the court said:

The rule by which statutes are construed to operate prospectively does not ordinarily apply to procedural or remedial legislation. 'The strict rule of construction contended for does not apply to remedial statutes which do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. These should receive a more liberal construction, and should be given a retrospective effect whenever such seems to have been the intention of the Legislature.'

\* \* \* \*

Courts of other states which have considered the specific issue raised here have held that statutes providing for attorney's fees to be taxed as costs are to be given retrospective application. In *Cox,* the court said:

> The general rule that statutes will be given prospective operation only does not apply to statutes effecting procedure. Taxing of attorney's fees as costs relates to a mode of procedure.

We agree.

(Citations omitted.)

■ We, in turn, adopt the court of appeals' rationale in holding that a statute providing for attorney's fees to be taxed as costs is to be given retrospective application. Since the trial court's judgment was not entered until after the statute went into effect, the trial court's award of attorney's fees was valid.

■ The appellants alternatively contend that the amount of the award for attorney's fees is excessive. In *Miller's Mutual Ins. Co.* v. *Keith Smith Co.,* 284 Ark. 124, 680 S.W.2d 102 (1984) (citing *Southall* v. *Farm Bureau Mutual Ins. Co. of Ark.,* 283 Ark. 335, 676 S.W.2d 228 (1984)), we noted that an award of attorney's fees is a matter within the sound discretion of the trial court, and in the absence of abuse, its judgment will be sustained on appeal.

Here, the trial court made an award of 90% of counsel's total bill for services provided on this case. The reduction in the percentage was a result of Transport's counsel having attributed 5% to 10% of the fee as being solely related to the claims of fraud or bad faith. Transport's counsel stated in his deposition testimony as follows:

> Q . . . Were you continuing during that trial preparation to prepare for the broader two counts in the litigation, the bad faith, punitive damages?
>
> A I can't remember, Chris. I was just preparing for everything that might happen at trial. I guess the primary thing was to prepare the breach of contract because if I didn't get the breach of contract, I couldn't get anything else.
>
> Q And good faith, that was pulling out time not contributed to the breach of contract, the five or ten percent you testified to?

A   Yes, because you just can't separate the two. It's almost an impossible task to separate issues like that.

Q   No further questions, thanks, I appreciate it.

The appellants further provide the following breakdown of Transport's counsel's expenses:

| | |
|---|---|
| Drafting pleadings | 3% |
| Client communication and case management | 7% |
| Discovery disputes | 28% |
| Deposition trips to Kansas City and Los Angeles | 10% |
| Researching and responding to summary judgment and motion in limine | 12% |
| Intensive trial preparation (5/21/89 to 5/31/89) | 30% |
| Trial | 10% |

Counsel's hourly rate structure was stipulated as being reasonable in amount. The deposition testimony obtained in Kansas City and Los Angeles was introduced into evidence or used for cross-examination purposes at trial; travel expenses related to the taking of these depositions. Even if we were to concede the accuracy of the appellants' characterization of Transport's costs and fees, the appellants fail to demonstrate any abuse of discretion in the trial court's award of attorney's fees to Transport.

Finally, Transport cross-appeals and asserts that the trial court erred in directing a verdict in favor of the appellants on the issue of fraud and the submission of punitive damages. We note initially that both of the parties briefed this point of error, but failed to indicate any reference to the trial court's ruling in the record. We have searched the transcript and found no ruling by the trial court relating to a directed verdict in favor of the appellants on the issue of fraud and the submission of punitive damages.

We noted in *McDonald* v. *Wilcox*, 300 Ark. 445, 780 S.W.2d 17 (1989), that although the statement of facts in the appellant's brief recited that a motion in limine was heard by the court in chambers and denied, where there was nothing in the record and consequently nothing in the appellant's appendix to

show that the motion was ever ruled on, and there was no record of any proceedings in chambers where the motion was supposed to have been denied, there was no order or ruling before the supreme court forming the basis for the point argued. As a result, there was nothing before the court on which to rule.

We find *McDonald* to be determinative on this point of error, and hold that there is nothing before us upon which to rule because there is no order or ruling forming the basis for the point argued.

Affirmed.

TURNER, J., not participating.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
### DECEMBER 17, 1990

800 S.W.2d 429

1. TORTS — ELEMENTS OF CAUSE OF ACTION IN DECEIT. — The five elements of the tort cause of action in deceit are: (1) a false representation made by the defendant, which must ordinarily be one of fact; (2) knowledge or belief on the part of the defendant that the representation is false — or, what is regarded as equivalent, that he has not a sufficient basis of information to make it; (3) an intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation; (4) justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it; (5) damage to the plaintiff, resulting from such reliance.
2. TORTS — DECEIT — NO PROOF OF FALSE REPRESENTATION. — Because the appellee could not establish false representation, there was no cause of action for deceit.
3. APPEAL & ERROR — REPETITIOUS ARGUMENTS NOT PROPER SUBJECT FOR REHEARING. — Arguments that are merely repetitious of those already considered by the court are inappropriate subjects for a petition for rehearing.

Petition for Rehearing; denied.

*Eichenbaum, Scott, Miller, Liles & Heister, P.A.*, by: *Christopher O. Parker*, for appellants.

*William M. Griffin III*, for appellee.

JACK HOLT, JR., Chief Justice. All parties requested a petition for rehearing.

The appellee, Arkansas Transport Company, Inc. (Transport), cross-appealed and asserted that the trial court had erred in directing a verdict in favor of the appellants, Larry Barnett, The Farmers Insurance Group of Companies (Farmers), and The Truck Insurance Exchange (Exchange), on the issue of fraud and the submission of punitive damages. The parties, in their briefs, did not direct us to a ruling on this issue nor did this court find a specific ruling in the record by the trial court relating to these issues; as a result, we declined to review Transport's cross-appeal.

Transport cites to its supplemental appendix for a showing that the trial court ruled on the appellants' motion for directed verdict on fraud and punitive damages. The appellants initially made the motion in issue, then later made a motion for directed verdict on negligence, followed by the trial court's granting of "the motion." Although we interpreted the trial court's action to be in reference to the motion for directed verdict on negligence, which directly preceded the ruling, on further examination of the record we now recognize that the trial court evidently meant to include the motion for directed verdict on fraud and punitive damages in its ruling as well. Even so, Transport's argument is unpersuasive on this issue.

■ In *Storthz* v. *Commercial Nat'l Bank*, 276 Ark. 10, 631 S.W.2d 613 (1982) (citing *MFA Mutual Ins. Co.* v. *Keller*, 274 Ark. 281, 623 S.W.2d 841 (1981)), we set forth the five elements of the tort cause of action in deceit. Proof of each element is necessary, and the elements are as follows:

> 1)   A false representation made by the defendant. In the ordinary case, this representation must be one of fact.
>
> 2)   Knowledge or belief on the part of the defendant that the representation is false - or, what is regarded as equivalent, that he has not a sufficient basis of information to make it. This element often is given the technical name

of 'scienter".

3)  An intention to induce the plaintiff to act or to refrain from action in reliance upon the misrepresentation.

4)  Justifiable reliance upon the representation on the part of the plaintiff, in taking action or refraining from it.

5)  Damage to the plaintiff, resulting from such reliance.

█ Transport asserts that the basic misrepresentation in this case was a representation to the insured that he had an insurance policy with a guaranteed rate for a year. Transport relies on letters dated March 8, 1985, and August 28, 1985, for its proposition that the Exchange made false representations with reference to the policy rates upon which it justifiably relied when it renewed its policy; however, the letter dated March 8 refers to a prior rate increase already in effect, and the letter dated August 28 merely contains observations and comments on the insurance coverage rates at issue. The evidence also reflects that the Exchange's Board of Governors did not approve the decision to increase the insurance rate until December 1985. Thus, the Exchange's decision in December could not have served as the basis of a false representation to Transport during its consideration of a policy renewal in September. In short, Transport has not met the threshold requirement of the first element of the cause of action; there was no false representation.

The appellants assert two points in their petition for rehearing; 1) that it should have been proper cross-examination to have asked Mr. Siegler, Transport's Chief Operating Officer, about his January 17 publication of an insurance surcharge, and 2) that a more complete, formal record was made relating to the relevancy of the insurance surcharge than this court originally considered and, consequently, the trial court's ruling should be addressed.

█ The appellants' first argument was thoroughly discussed in the text of the opinion, and arguments that are merely repetitious of those already considered by the court are inappropriate subjects for a petition for rehearing. *Butler Mfg. Co.* v. *Hughes*, 292 Ark. 198, 731 S.W.2d 214 (1987).

With regard to the appellants' second point, the appellants correctly point out, and the opinion reflects, that the insurance

surcharge was proffered as an exhibit. Accordingly, the issue of the relevancy of the insurance surcharge was thoroughly discussed in this court's opinion and properly resolved. We declined, however, to speculate on the effect of the trial court's reference to the collateral source doctrine in making its decision to exclude the document. We will not do so now.