The Honorable Jimmy Jeffress State Senator P.O. Box 1695 Crossett, AR 71635-1695
Dear Senator Jeffress:
I am writing in response to your request for an opinion on the following question concerning the state employees' deferred compensation program:
 Does Act 1596 of 2001 give the State of Arkansas the authority to remove previous contributions by State employees from their current accounts (Valic and Diversified Investment Advisors) and deposit these monies with the new plan administrator (CitiStreet) without the consent of the individual state employees?
RESPONSE
It is my opinion that the answer to this question is "yes."
Act 1596 of 2001 amends Title 21, Chapter 5, Subchapter 5 of the Arkansas Code pertaining to public employees' deferred compensation programs. It is codified at A.C.A. §§ 21-5-501 — 510 (Supp. 2001). Although the act amends the existing law in several respects, its main thrust is the authorization of other investment vehicles for the deferred compensation programs. Previously, investments were limited to life insurance or annuity contracts purchased from insurance companies. See A.C.A. §21-5-504(b) (Repl. 1996). The investment options now include direct investments in other investment vehicles. As amended, Section 21-5-504
(b) states:
(b)(1) The administrator of the deferred compensation program may:
 (A) Contract for, purchase, or otherwise procure annuity contracts for the deferred compensation program; and
 (B) Through a trust or custodian, contract for, purchase, or otherwise procure fixed or variable life insurance contracts, mutual funds, pooled investment funds, or such other investment vehicles that comply with state and federal laws and which permit the deferral of compensation for income tax purposes.
It is my understanding that the administrator of the state employees' deferred compensation program has developed a new state-sponsored deferred compensation plan called the Arkansas Diamond Deferred Compensation Plan (hereinafter "Diamond Plan"), following the enactment of Act 1596 of 2001.[1] It is my further understanding that the state administrator has contracted with CitiStreet and Stephens Inc. pursuant to the above authority in Act 1596, and that existing annuity account balances have been or will be transferred from The Variable Annuity Life Insurance Company ("VALIC") and Diversified Investment Advisors ("DIA") to accounts at CitiStreet. Your question is whether Act 1596 provides authority for this transfer without the consent of the individual employees whose deferred compensation is invested in VALIC and DIA annuity contracts.
I believe it is clear that the new investment authority under Act 1596 of 2001 extends to current account balances, i.e., amounts that were previously deducted from the participants' pay to provide deferred compensation. The Emergency Clause to Act 1596 notes that "existing law concerning public employees' deferred compensation plans currently provides few alternatives for investing deferred compensation[,]" and that "additional investment alternatives are necessary to enable public employees to maximize their earnings from deferred compensation investments." Acts 2001, No. 1596, § 6. The act thus offers the alternative investment vehicles to remedy what was apparently viewed as an earnings limitation under existing law. Accordingly, it is my opinion that the act is "procedural" in nature, and that the legislature intended for it to apply to previous deferrals. Although legislation is presumed to operate only prospectively unless the General Assembly indicates otherwise (Employers Surplus Insurance Co. v. Murphy Oil USA, Inc.,338 Ark. 299, 993 S.W.2d 481 (1999)), this rule does not ordinarily apply to procedural or remedial legislation. Gannett Rover States Publ'g Co. v.Arkansas Industrial Dev. Comm'n, 303 Ark. 684, 799 S.W.2d 543 (1990). Remedial statutes are those that do not disturb vested rights, or create new obligations, but only supply a new or more appropriate remedy to enforce an existing right or obligation. Harrison v. Matthews,235 Ark. 915, 362 S.W.2d 704 (1962). Procedural legislation is more often given retroactive application. Barnett v. Arkansas Transp. Co.,303 Ark. 491, 798 S.W.2d 79
(1990). The cardinal principle for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed.Arkansas Dep't of Human Servs. v. Walters, 315 Ark. 204,866 S.W.2d 823 (1993).
Following these principles of construction, I conclude that Act 1596 is remedial legislation and that it applies with respect to previous deferrals of compensation. In my opinion, no "vested rights" are disturbed by the act so as to prevent its retroactive effect. According to my review of the relevant statutes, the investment authority resides in the State rather than individual participating employees. This is clear, in my opinion, from the language of A.C.A. § 21-5-501 et seq.,
both before and after the 2001 amendments, as well as from agreements that have been entered pursuant to the legislation. Act 1596 gives the investment authority to the "administrator of the deferred compensation program[,]" i.e., the Executive Director of the EBD. See A.C.A. §§21-5-504(b)(1), supra and 21-5-506(a)(1) (Supp. 2001), supra at n. 1. Previously, Section 21-5-504(b)(1) (Repl. 1996) provided in relevant part that "[t]he state . . . may subsequently, in its sole discretion,
contract for, purchase, or otherwise procure a fixed or variable life insurance or annuity contract. . . ." (Emphasis added). Acting under this latter authority, the State entered into a "Master Agreement" with VALIC and with DIA. The entering of a "master agreement" was in accordance with A.C.A. § 21-5-504(b)(2) (Repl. 1996), which required a signed master agreement between the life insurance agent and "the administrator of the plan."[2] The State clearly retained its authority over the State Deferred Compensation Plan ("Plan") funds under a provision in the Master Agreement that stated:
 [t]he Board shall have the option to transfer all or any portion of the [DIA or VALIC] Annuity Contracts to an alternative funding medium under the Plan without Participant or Beneficiary consent, except the Board shall be subject to the transfer restrictions set forth in (a) above. [3]
See Master Agreements for the State of Arkansas Deferred Compensation Plan, entered into between the State of Arkansas and DIA and between the State of Arkansas and VALIC (effective July 1, 1998) at Article 4.
It thus seems clear that a participant in the Plan had no vested right in the annuity contracts that were purchased by the State pursuant to A.C.A. § 21-5-504 (Repl. 1996). Those contracts were subject to the Master Agreement, which clearly reflects the administrator's option to transfer funds. Moreover, prior law, like Act 1596, made no provision for the consent of individual employees to the contracts. The employee has a contract with the State to defer his or her compensation. See A.C.A.21-5-504(a) (Repl. 1996). But the State contracted for the annuities. Pursuant to Article 2 of the Master Agreements, group annuity contracts were issued in the name of the State as owner. The issuance of group contracts further reflects the fact that the benefit envisioned under A.C.A. § 21-5-501 et seq. is an institution-wide deferred compensation plan, rather than a benefit that is extended on an individual employee basis. Cf. Op. Att'y Gen. 99-267 at n. 1. While it is my understanding that a choice of investment vehicles was given to Plan participants through the annuity contracts with VALIC and DIA, those contracts were, as noted above, subject to the Master Agreements which affirmed the administrator's option to transfer funds under the Plan. This, in my opinion, belies an assertion that individual employees have a vested right in a particular investment vehicle.
In conclusion, therefore, it is my opinion that Act 1596 of 2001 remedies the previously limited investment authority of the State, and that the administrator of the State deferred compensation plan may, pursuant to its regulatory authority, transfer existing account balances from VALIC and DIA to other investment options without the consent of Plan participants.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh
[1] The Employee Benefits Division ("EBD") of the Department of Finance and Administration ("DFA") administers the state employees' deferred compensation program pursuant to A.C.A. 21-5-506 (a) (1), as amended by Act 1596. The administrator is authorized under A.C.A. 21-5-506(b) to "promulgate any and all regulations deemed necessary to carry out the intent and purposes of [the] subchapter." The Diamond Plan was thus developed pursuant to this regulatory authority.
[2] The plan was administered by the Arkansas State Employee and Public School Personnel Board ("Board") until 1999, when DFA was substituted for the Board. Acts 1999, No. 1280. As noted above, Act 1596 of 2001 names the Executive Director of the Employee Benefits Division of DFA as the administrator.
[3] The "transfer restrictions" referenced in this provision pertain to a particular investment option (the "Fixed Account Plus" option). It is my understanding that the Arkansas Diamond Plan excludes the fixed accounts from the annuity transfers.