Colonel John R. Bailey Director Arkansas State Police Post Office Box 5901 Little Rock, Arkansas 72215
Dear Colonel Bailey:
This is in response to your request for an opinion on two questions relating to Act 855 of 1995, the "Arkansas Speed Trap Law." Under the act, the Arkansas State Police is obligated to investigate, upon the request of a prosecuting attorney, whether a municipality is abusing police power by enforcing the criminal and traffic laws on an "affected highway" for the principal purpose of raising revenue for the municipality, rather than for protecting the public safety and welfare. Under section 3(b) of the act, it will be presumed that the municipality is abusing police power:
 upon a finding that the amount of revenue produced by fines and costs from traffic law violations for which citations were written by the police department of the affected municipality occurring on the affected highways exceed thirty percent (30%) of the affected municipality's total expenditures, less capital expenditures and debt service, in the preceding year or that more than fifty percent (50%) of the summons written for speeding in the affected municipality are written for speed limit violations which were ten (10) miles per hour or less than the posted limit.
Section 4 of the act contains sanctions that may be imposed against a municipality found to be abusing police power.
Your questions are:
 1. Does section 3(b) allow the Arkansas State Police to consider the preceding year's citations, even though the law was not in effect; or, must we only consider citations written since July 29, 1995 [the act's effective date]?
 2. Depending on your response to the first issue, could the Arkansas State Police call for sanctions under section 4, if it considered citations and statistical [data] prior to the enactment of the law?
A statute is generally presumed to operate prospectively only and will be so construed unless a legislative intent to make it apply retroactively is expressly stated or necessarily implied. Estate of Wood v. ArkansasDep't of Human Serv., 319 Ark. 697, 894 S.W.2d 573 (1995). The presumption of prospective application only does not apply, however, to procedural or remedial legislation. Id. When considering whether to apply retroactively a procedural or remedial statute that contains no express statement or necessary implication that it should have retroactive effect, the courts resort to the fundamental rule of statutory construction and search for the legislative intent underlying the statute by considering "the spirit which prompted its enactment, the mischief sought to be abolished, and the remedy proposed." Arkansas Dep't of HumanServ. v. Walters, 315 Ark. 204, 209, 866 S.W.2d 823 (1993). In the event there is perceived a legislative intent that a statute should apply retroactively, the courts will so apply it unless to do so would disturb a vested right or create a new obligation. Id. at 210.
Although it is not entirely clear how a court would rule in this instance, it is my opinion that Act 855 likely would be held to have prospective application only, and accordingly would be interpreted to permit the consideration only of those citations issued on or after July 29, 1995.
Initially, I note that Act 855 does not contain an express statement to the effect that citations written before its effective date should be considered when determining whether a municipality is abusing police power. Neither, in my view, does the act carry an inescapable implication that such citations should be considered. There being no clear expression of legislative intent on the subject of retroactivity, one must consider whether the act is procedural or remedial legislation.
In my view, Act 855 clearly is not fundamentally a procedural statute, notwithstanding that it sets forth procedures to be followed by the Arkansas State Police in its performance of its duties thereunder. The act is not primarily concerned with the procedural steps that must be taken to enforce a right or obligation.
It is my opinion, however, that the act likely would be held to constitute remedial legislation.[1] Remedial statutes are those that "supply a new or more appropriate remedy to enforce an existing right or obligation." Estate of Wood, 319 Ark. at 701. The municipal obligation to exercise its police powers primarily for the protection of the public safety and welfare, rather than to raise funds, did not originate with Act 855. See Alstadt v. Arkansas-Missouri Power Co., 215 Ark. 212,219 S.W.2d 938 (1949). The police power is one that has been held to have been abused in certain cases. See, e.g., Union Carbide Carbon Corp.v. White Rivers Distrib., Inc., 224 Ark. 558, 275 S.W.2d 455 (1955);Wilkins v. City of Harrison, 218 Ark. 316, 236 S.W.2d 82 (1951). The fact that there may previously have been no clear remedy, or at least no statutory remedy, for an abuse of police power of the nature addressed by Act 855 is not, in my view, particularly relevant. A statute would appear to be no less remedial merely because it establishes, for the first time, a remedy for an preexisting wrong, rather than replacing or supplementing a prior remedy; such a statute would "supply a new . . . remedy to enforce an existing right or obligation." Estate of Wood,319 Ark. at 701.
As set forth above, however, a determination that a statute is remedial does not necessarily compel the conclusion that it is to be applied retroactively; the question becomes, rather, one of legislative intent. The "spirit" in which the act was adopted and the mischief sought to be abated are fairly evident from the provisions of the statute. The General Assembly apparently determined that some cities and towns, in need of revenues for municipal operations, may be improperly subjecting motorists to inconvenience, delay, expense, and criminal liability for the primary purpose of funding municipal operations, rather than to protect the public safety and welfare. The act provides a mechanism for determining if this is true in particular cases. With respect to remedies, the act permits the Director of the State Police to order an offending municipality to cease patrolling all or part of an affected highway, and to order that funds arising from violations on the affected highway be deposited to the appropriate County General Fund rather than to the municipality. Act 855, § 4. The act also makes it a criminal offense for a municipal law enforcement officer to patrol an affected highway after the entry of an order prohibiting the same. Act 855, § 5. The remedies provided do not, of themselves, suggest that the General Assembly intended the State Police to consider citations written before the effectiveness of the act.
While the act does not create the civil wrong of abusing police power, it does set forth objective and easily determinable threshholds at which a municipality will be presumed to be engaging in the wrong in this context (i.e., thirty percent of municipal expenditures, or fifty percent of speeding citations for minor infractions). Prior to the adoption of the act, municipal actions such as the ones at issue apparently could be held to be abuses of the police power only if they were found to be arbitrary, unreasonable, or unrelated to a legitimate municipal purpose.See Union Carbide, 224 Ark. 558; Wilkins, 218 Ark. 316. It is true that the presumption of abusing police power is not conclusive and that a municipality may be able to overcome it in a particular case. Conversely, a municipality might be held to be abusing police power notwithstanding that its actions do not rise to the levels that cause the presumption to apply. It would nonetheless seem to me to offend traditional notions of fairness to apply objective standards to a municipality's past conduct in order to arrive at a presumption of wrongdoing in cases where the municipality was not on notice, at the time of the conduct, that its actions would be so measured.
It should be obvious that the actions of some municipalities may trigger the presumption without amounting to the abuse of police power. A small town having a small budget, and few streets and roads other than an "affected highway," may issue citations, wholly for the purpose of protecting the public, that happen to generate more than thirty percent of its expenditures. Similarly, a municipality may legitimately determine to concentrate its traffic enforcement efforts in areas of particular danger, such as school zones, and to enforce the law strictly there, the result being a disproportionate number of citations issued for what otherwise might be viewed as de minimus violations. While I do not doubt the power of the General Assembly to impose the presumption, it may not be fair to apply the presumption against such a municipality on the basis of its prior conduct. After being informed of the presumption, a municipality is able to assess its past conduct and determine its future course. If it determines to continue to enforce traffic laws as it has in the past, notwithstanding that the presumption will be imposed upon it as a result, it may at least be able to develop and preserve evidence enabling it to overcome the presumption, an opportunity that may not be available to it if actions taken prior to the effectiveness of the act are considered. The imposition of the act's sanctions upon an innocent municipality unable to overcome the presumption due to a lack of warning would seem to be particularly unjust, and I cannot assume that the General Assembly intended that possibility.
In addition, it might be noted that the act does not contain an emergency clause. While I do not attach great significance to this omission, the fact remains that one might expect to find such a clause in an act addressed to past, as well as present and future, conduct. The omission of an emergency clause might well be viewed as a way of giving municipalities notice of the provisions of the act and an opportunity to adjust their conduct accordingly. The lack of an emergency clause appears to me to be some evidence of a legislative intent that the act have prospective effect only.
Finally, while I do not believe that the act disturbs vested rights or creates new obligations, that conclusion is not entirely free from doubt. (As discussed above, a statute that disturbs vested rights or creates new obligations will not be applied retroactively.) One might characterize the act as creating a new obligation to refrain from issuing certain traffic citations, or as disturbing the right to engage in law enforcement activities that may be entirely for public safety purposes if such enforcement happens to raise certain amounts of money or is too "strict." While I would characterize the act as merely providing remedies for a wrong already prohibited (i.e., abusing police power), I cannot say conclusively that the opposite view would not be accepted, thereby creating another reason not to apply the statute retroactively.
The foregoing makes an answer to your second question unnecessary.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] A determination that Act 855 is not remedial would not alter my ultimate conclusion (i.e., that the act should be applied prospectively only). If the act is not remedial, the presumption of prospective application only will apply, and I perceive nothing in the act that would operate to overcome that presumption.