OPINION OF THE COURT
C. Raymond Radigan, J.
In this proceeding under SCPA article 17-A, the guardians of the adult disabled person apply for court approval of the establishment of a supplemental needs trust (SNT). New York now by statute authorizes creation of a SNT in which the beneficiary is the creator, provided such trust meets the requirements of Social Services Law § 366 (2) (b) (2), and of the regulations implementing such statute (EPTL 7-1.12 [a] [5] [v]).
Social Services Law § 366 (2) (b) (2) (iii) exempts as an available income or resource a SNT established for the benefit of a disabled individual under 65 years of age by a parent, grandparent, legal guardian or a court of competent jurisdiction, provided that upon the death of such individual the State will receive all amounts remaining in the trust up to the total value of all medical assistance paid on behalf of such individual. Social Services Law § 366 (2) (b) (2) (iv) expressly authorizes the Department of Social Services (DSS) to promulgate regulations as may be necessary to carry out the provisions authorizing SNTs which, among other things, shall include provisions for assuring the fulfillment of fiduciary obligations of the trustee with respect to the remainder interest of DSS. Such regulations may also require notification to DSS of the trust creation or funding, the death of the beneficiary, and in the case of trusts exceeding $100,000, transactions tending to "substantially deplete the trust corpus”; notification to DSS of any transactions involving transfers from the trust for less than fair market value; the bonding of the trustee when assets exceed $1 million, unless excused by a court, or the bonding of the trustee when the assets of the trust are less than $1 million upon order of the court.
The Attorney-General appearing on behalf of DSS has approved of the application and the trust format with one small modification, that is, that any expenditure for computer equipment be for equipment usable by the beneficiary.
The statute clearly seeks to protect "the remainder interest” of the State by authorizing the promulgation of regula *890 tians to assure the fulfillment of the trustee’s fiduciary obligations. These provisions, however, should not be read as obviating any additional controls required by the court since the regulations promulgated by the State are for the protection of its own remainder interest, whereas the court is primarily concerned with the protection of the disabled person and likewise to assure the fulfillment of fiduciary obligations. Since in the context of a disabled person, court approval is required for the establishment of a SNT, in the inherent exercise of its power, the court may fashion or condition the exercise of that privilege in such manner as it believes will sufficiently protect the interest of the disabled person (see, DiGennaro v Community Hosp., 204 AD2d 259). Accordingly, the application for the establishment of a SNT here is approved upon the following terms and conditions:
1. Rather than have the trust format specify in detail those items for which expenditures may be made, the court prefers language of a general nature authorizing the expenditure of funds for the supplemental needs of the disabled person not provided through governmental entitlements which are reasonable and necessary for the individual support of the disabled person, rather than to include in the trust, for instance, a provision as suggested that the "special needs” of the beneficiary include the purchase of an "automobile and/or van.” In the court’s opinion, specifying the items that may be purchased unnecessarily suggests that such a purchase may be reasonable and necessary under any given circumstances and tends to foreclose an inquiry by the court as to reasonability and necessity. While the language suggested as part of a supplemental needs trust covering use of the funds in EPTL 7-I. 12 is not required to be employed, nevertheless that is the type of language the court would prefer. Accordingly, Article II, providing for distribution of income and principal during the disabled person’s lifetime, should be redrawn and resubmitted.
2. Article I (3) declares that the trust is irrevocable and may not "be amended, altered or modified in any manner, subject to paragraph (2) (b) of article v hereof.” Actually, there is no paragraph (2) (b) of Article V, the reference more than likely being to Article V (3) (c), which permits the trustees to amend the trust in order to maintain eligibility for governmental programs. The designation should be corrected and any amendment made expressly conditioned upon application to the court.
*891 3. Article II (1) (f) which authorizes the trustee to engage legal counsel in disputes with DSS should be deleted since again this involves what amounts to an advance assessment of the merits of any situation.
4. Article III provides for the distribution of income and principal upon the death of the disabled person. That portion of the trust which states that an account is to be obtained from DSS for services that are "paid after the date of the Order attached hereto as Exhibit A” should be deleted. This may infer some restriction on the amount of reimbursement due DSS insofar as when those services were rendered.
Paragraph (2) (b) provides that any balance remaining after payment to DSS is to be distributed by the trustees outright to the disabled person’s parents in equal shares or to the survivor of them, and in the event that neither survives, to her siblings per stirpes. This paragraph should be revised to provide that the balance is payable to the estate of the disabled person. While apparently the proposed language is suggested to avoid the necessity of probate, nevertheless the court prefers payment being made to the estate rather than naming individuals or providing for intestacy since it is always possible the disabled person might have issue or be competent enough to make a will.
5. Article IV contains a provision which seeks to insulate the trust from any and all claims of creditors. EPTL 7-3.1 voids any self-settled trust as against the rights of creditors; the establishment of a SNT merely insulates the trust from the claims of DSS for medical assistance granted until the remainder is payable. Nowhere is there any change with regard to the rights of creditors in general, and accordingly, paragraph (1) (a) of Article IV should be deleted insofar as it attempts to insulate the trust from creditors in general.
6. Article V is entitled Powers and Duties of Trustees, and paragraph (1) relates to investments. The court is of the opinion that the language in general is too broad. For instance, the trust states in part that "The Trustees shall not be limited to the type and character of investments in which the Trustees may invest the funds of this Trust, so long as the Trustees use reasonable prudence and judgment in the selection of investments.” Rather, the court is of the opinion that paragraph (1) should be replaced merely by a provision authorizing the trustees to invest the trust funds in accordance with EPTL 11-2.2, and 11-2.3 effective January 1, 1995, and that *892 the trustees in addition are given such powers as are provided in the Fiduciaries Powers Act (EPTL 11-1.1).
7. Article VI covering provisions relating to trustees in part provides that "The Trustees shall be entitled to receive a fair and just compensation for services rendered hereunder, and shall also be reimbursed for all reasonable expenses incurred in the management and protection of the Trust Estate and travel and lodging expenses to and from the Trustees’ residence and the disabled person’s residence as frequently as necessary in the Trustees’ sole discretion.” Rather than that provision, the court will approve of statutory compensation to the trustees under SCPA 2309. With regard to additional compensation and other expenses, the court prefers not to give blanket authorization in advance without establishment of the necessity and reasonableness.
8. Subparagraph (e) of Article VI also provides that no bond or other security shall be required of any trustee or successor trustee. As indicated above, the court does not deem itself bound by any parameters relating to bonds set forth in Social Services Law § 366 (2) (b) (2) (iv). The court will require language in the trust providing for such combination of a bond, joint control or custodial arrangement as shall be required by the court. At the present time, the court will either require a full bond or a combination of bond and joint control or custodial arrangement which will protect the entire fund. A full bond, of course, will permit the trustees to have access to the funds and to employ their discretion in accordance with the statute in making investments (EPTL 11-2.2, and EPTL 11-2.3, eff Jan. 1, 1995). Where the funds are deposited under joint control with a depository subject to the further order of the court, funds cannot be withdrawn without permission of the court, and the only investments authorized are bank deposit investments, United States savings bonds, treasury bills, notes and bonds, and municipal bonds (see, SCPA 1708). In a custodial arrangement, the court will permit a deposit with a satisfactory custodian, with again no withdrawals without court order. However, here investments may be made in securities generally in accordance with the statute (EPTL 11-2.2, and EPTL 11-2.3, eíf Jan. 1, 1995), provided a satisfactory investment advisor is selected to act as a delegee of the trustees (EPTL 11-2.3).
9. Article VI also deals with the trustees’ reporting responsibility and provides that the trustees shall report at least every 12 months to the disabled person and "her legal representa *893 tive, if any, and to the next successor Trustees.” The trust contains no provision requiring any account to be filed with the court, and in fact Article VIII entitled "Trust Administration and Courts” specifically provides that the "Trust shall be administered according to its terms expeditiously and without order, approval or other action by any court.” Both Article VI (1) (a) dealing with reporting responsibilities and Article VIII should be deleted, and in their place another provision requiring the filing of annual accounts by the trustees with the court in such format as may be required. This annual inventory and account need not be burdensome and may merely include a schedule indicating receipt of income and principal distributions, a schedule of all disbursements made, together with the necessary receipts, and a schedule of all assets remaining on hand, together with their current market value. In order to monitor future expenditures, rather than merely reviewing those already made, the court will require the establishment of a budget for the ensuing year which the trustees will be required to file with the annual account. Accordingly, the trust should also contain a provision requiring the establishment of a budget for the ensuing year at the time of the filing of the annual account.
10. Article VII dealing with appointment of trustees should delete subparagraph (e), which provides that "No Trustee shall be liable or responsible for any loss or damage arising by reason of any act or omission” and continues on "except as to gross negligence, willful neglect or unlawful act.” EPTL 11-1.7 provides that it is contrary to public policy to exonerate a fiduciary from liability for failure to exercise reasonable care, diligence and prudence.
Resubmit proposed trust in accordance with the above.