*908 OPINION OF THE COURT
John B. Riordan, J.
In this proceeding to establish a supplemental needs trust solely with Social Security disability payments, the petitioner is Hope Kennedy, the guardian of the person and property of John Kennedy, a disabled person who is under the age of 65. Supplemental needs trusts are funded with resources of a disabled individual under the age of 65 and applications to establish such trusts are routinely granted (see Matter of Goldblatt, 162 Misc 2d 888 [1994]; Matter of Morales, NYLJ, July 28, 1995, at 25, col 1). The instant proceeding, however, is atypical in that the trust will be funded solely with Social Security disability payments and involves the analysis of two seemingly inconsistent provisions of the Social Services Law (see Social Services Law § 366 [2] [a] [7]; [b] [2] [iii]).
The petition was brought on notice to both the Nassau County Department of Social Services and the New York State Attorney General’s Office, neither of which objected to the formation or source of funding of the supplemental needs trust. The Attorney General has objected to several provisions of the proposed supplemental needs trust. Those objections will be addressed herein. However, despite the fact that neither the Attorney General nor the Department of Social Services objected to the proposed application, before the court can approve a supplemental needs trust for a disabled individual, “it is appropriate for the court to seek assurance that a proposed supplemental needs trust complies with the controlling laws and rules regarding Medicaid eligibility” (Matter of McMullen, 166 Misc 2d 117, 119 [1995]).
John Kennedy currently receives $1,391 per month in Social Security disability payments (as a disabled adult child). The payments are made to Hope Kennedy who is John Kennedy’s representative payee (see 20 CFR 404.2001). He resides in the community and collects community based medical assistance (Medicaid).
When an individual resides in the community and receives Medicaid, New York allows the individual to retain monthly income based on state-supplemented Supplemental Security Income (SSI) amounts for an individual (Social Services Law § 366 [2] [a] [7]; see also Goldfarb and Rosenberg, New York Guide to Tax, Estate and Financial Planning for the Elderly § 6.05 [1] [2003]). Thus, in 2003, John Kennedy was entitled to keep $662 of his monthly income; the excess monthly income, in *909 the amount of $729, was paid to the Association for the Help of Retarded Children as a vendor of the Nassau County Department of Social Services. The payment of excess income is referred to as the “spend down” program and is found in the New York Social Services Law which provides: “[n]o other income or resources, including federal old-age, survivors and disability insurance . . . shall be exempt and all other income and resources shall be taken into consideration and required to be applied toward the payment or partial payment of the cost of medical care and services available under this title, to the extent permitted by federal law” (Social Services Law § 366 [2] [a] [7], as added by L 1966, ch 256, as amended by L 1990, ch 938).
Subsequent to the enactment of Social Services Law § 366 (2) (a) (7), 42 USC § 1396p (d) (4) was promulgated which provides that a parent, grandparent, guardian or court may establish a trust for a disabled person under the age of 65, with the disabled person’s assets, and as long as the trust provides that the State will receive all amounts remaining in the trust upon the death of the disabled person equal to the amount of total medical assistance paid, the assets will not be considered in determining the person’s eligibility for medical assistance (42 USC § 1396p [d] [4] [A]). This form of supplemental needs trust is commonly referred to as a payback trust or an exception trust.[1] The term “assets” is defined as “all income and resources of the individual” (42 USC § 1396p [e] [1]).
New York Social Services Law § 366 was amended in 1994 to conform to the federal law and provides that “[i]n evaluating the income and resources available to an applicant for or recipient of medical assistance, for purposes of determining eligibility for and the amount of assistance, the department must consider assets held in or paid from trusts” except “the department must not consider as available income or resources the corpus or income” of a supplemental needs trust created for a disabled *910 individual under the age of 65 (Social Services Law § 366 [2] [b] [2] [iii] [A], as added by L 1966, ch 256, as amended by L 1994, ch 170).
Although the spend down requirement as set forth in Social Services Law § 366 (2) (a) (7) and the supplemental needs trust provisions as set forth in Social Services Law § 366 (2) (b) (2) (iii) seem inconsistent, statutes that relate to the same thing, even though passed at different times or amendatory of another, are said to be in “pari materia” and are to be construed together (McKinney’s Cons Laws of NY, Book 1, Statutes § 221 [a]). The provisions are to be given “uniformity of application and construction, and applied harmoniously and consistently” (McKinney’s Cons Laws of NY, Book 1, Statutes § 221 [b], Comment). To achieve consistency, the court will consider the establishment of the supplemental needs trust as an exception to general Medicaid rules including the spend down rules.[2] This will be explained more fully below.
The establishment of a supplemental needs trust is considered an exception to the general resource and income rules for Medicaid eligibility. Although the legislative history regarding the payback trust is sparse, “[implicit in this legislation is the belief that it is sound public policy to allow a person with a disability [under the age of 65] to have an additional source of support during her lifetime in exchange for granting the State Medicaid agency the right to be reimbursed upon her death” (Joseph A. Rosenberg, Supplemental Needs Trusts for People with Disabilities: The Development of a Private Trust in the Public Interest, 10 BU Pub Int LJ 91, 131-132).[3] Further, the purpose of the supplemental needs trust is to “provide a *911 supplemental source of income for the disabled to cover expenses not already covered by government assistance programs, such as Medicaid” (Sullivan v County of Suffolk, 1 F Supp 2d 186, 188 [1998], affd 174 F3d 282 [1999], cert denied 528 US 950 [1999]).
New York courts routinely approve the establishment of supplemental needs trusts for disabled individuals under the age of 65 which are funded with the disabled person’s assets as long as the trust meets the statutory requirements (see Matter of Goldblatt, 162 Misc 2d 888 [1994]; Matter of Morales, NYLJ, July 28, 1995, at 25, col 1; Matter of Gillette, 195 Misc 2d 89 [2003]). The question of funding supplemental needs trusts with Social Security disability income, however, has been the subject of only two reported decisions in the State of New York (Matter of Lynch, 703 NYS2d 653 [1999]; Matter of Schwartz, NYLJ, Apr. 15, 2002, at 28, col 1). Ironically, the Lynch decision was subsequently withdrawn after reargument. On the other hand, applications to fund supplemental needs trusts with monthly annuity payments where the annuity payments were in excess of the Medicaid eligibility figures have been approved in at least two cases (Matter of Hyatt, NYLJ, Aug. 3, 1999, at 26, col 1; Matter of Diserio, NYLJ, May 15, 1996, at 29, col 3).
In New York, the Department of Health’s[4] policy is that “[w]hile most exception trusts are created using the individual’s resources, some may be created using the individual’s income, either solely or in conjunction with resources. Income diverted directly to a trust or income received by an individual and then placed into a trust is not counted as income to the individual for Medical eligibility purposes” (NY St Dept of Soc Servs Admin Directive 96 ADM-8, Mar. 29, 1996, addendum, Sept. 23, 1997). Where the income is Supplemental Security Income, however, at least one court found that “[i]t is clearly not the function of a supplemental needs trust to isolate one’s SSI payments in order to enhance an individual’s eligibility for increased benefits. The proposed sheltering of such benefits counteracts the principles sustaining the SSI program and is against public policy” (Matter of Ullman, 184 Misc 2d 7, 9 [2000]).
Social Security disability payments, however, are benefits paid to children of individuals entitled to old age or disability *912 insurance payments and are paid as long as the child is under the age of 18 or disabled (42 USC § 402 [d] [1]). These benefits “do not purport to be general assistance laws that simply pay money to those who need it most. . . the primary objective was to provide workers and their families with basic protection against hardships created by the loss of earnings due to illness or old age” (Mathews v de Castro, 429 US 181, 185-186 [1976]). Thus, an application to fund a supplemental needs trust with Social Security disability payments was granted by the surrogate in Onondaga County because there was no prohibition against it, “there are no particular uses to which the SSD payments must be put” and public policy wouldn’t be violated (Matter of Lynch, Sur Ct, Onondaga County, File No. 90-1897, Mar. 14, 2000).[5] Similarly, in Matter of Schwartz (NYLJ, Apr. 15, 2002, at 28, col 1), the surrogate approved the establishment of a supplemental needs trust for a disabled individual under the age of 65 where the supplemental needs trust was to be funded with both resources and Social Security disability payments and it would ensure Medicaid eligibility and “avoid income spend down requirements.”
Although the petitioner believes that the instant application does not violate public policy, she argues that such an analysis is unnecessary in light of Matter of Schwartz (NYLJ, Apr. 15, 2002, at 28, col 1) and the agency’s position that income can be diverted to a supplemental needs trust and not affect eligibility for Medicaid. “An administrative agency’s interpretation of the statute it is charged with implementing is entitled to varying degrees of judicial deference depending upon the extent to which the interpretation relies upon the special competence the agency is presumed to have developed in its administration of the statute” (Matter of Rosen v Public Empl. Relations Bd., 72 NY2d 42, 47 [1988]). Here, the agency is assumed to have special com *913 petence in administering its own Medicaid program. Neither the Attorney General nor the Department of Social Services objected to the application to fund the supplemental needs trust with Social Security disability payments. Accordingly, the court concludes that the application on its face does not violate public policy and the application is granted.
The analysis does not end here, however, as in its “inherent exercise of its power, the court may fashion or condition the exercise of that privilege in such manner as it believes will sufficiently protect the interest of the disabled person” (Matter of Goldblatt, 162 Misc 2d 888, 890 [1994]). Therefore, the application is approved upon the following terms and conditions:
Section 2.1 (c) of the proposed supplemental needs trusts provides that the trustee may seek legal counsel, financial planners, social workers and other nonmedical professionals.
Section 2.9 provides that the trustee has the discretion to invest the principal or accumulated income in appropriate housing. The trustee is further authorized to use the trust to pay for modifications to the house. Rather than detail the proposed expenditures, it is the court’s opinion that “specifying the items that may be purchased unnecessarily suggests that such a purchase may be reasonable and necessary under any given circumstances and tends to foreclose an inquiry by the court as to reasonability and necessity” (Matter of Goldblatt, 162 Misc 2d 888, 890 [1994]).
Section 4.7 provides that the trustee shall file an annual accounting with the Clerk of the County of Nassau. The annual accounting should be filed with the Surrogate’s Court.
Finally, the supplemental needs trust as originally filed allowed for the payment of expenses upon the death of John Kennedy prior to reimbursement to the State. The Attorney General objected. The Social Security Administration’s Program Operations Manual System (POMS), which is the “publicly available operating instructions for processing Social Security claims” (Washington State Dept. of Social & Health Servs. v Guardianship Estate of Keffeler, 537 US 371, 385 [2003]) provides that a supplemental needs trust must list the State “as the first payee” and the State “must . . . have priority over payment of other debts and administrative expenses” (POMS SI 01120.203 [B] [1] [f] [2002]). POMS guidelines “represent the Commissioner’s interpretation of the statutory mandate, they deserve substantial deference, and will not be disturbed as long as they are reasonable and consistent with the statute” (Bubnis *914 v Apfel, 150 F3d 177, 181 [1998]). Accordingly, the supplemental needs trust must comply with the POMS guidelines.
For all of these reasons, the application is granted. The supplemental needs trust will be approved when in conformity with this decision.

. The petitioner refers to 42 USC § 1396p (d) (4) (B) in support of his application. This section provides for the establishment of payback trusts funded solely with pension, Social Security benefits and other income (42 USC § 1396p [d] [4] [B] [i]). The trusts are limited, however, to states that limit eligibility for nursing home medical assistance (42 USC § 1396p [d] [4] [B] [iii]). These states are called “income cap” states and medical eligibility for nursing home care is confined to individuals whose income does not exceed 300% of the current Supplemental Security Income (see, Ira Stewart Wiesner, OBRA ‘93 and Medicaid: Asset Transfers, Trust Availability, and Estate Recovery Statutory Analysis in Context, 47 Soc Sec Rep Serv 757, 783). New York is not an income cap state.

. This conclusion is further supported by the analysis of Roy Trudel, Senior Analyst, Office of Beneficiary Services, Medicaid Bureau, who, in a letter dated August 3, 1995 attached as exhibit C to the petition, when addressing this question, stated: “the statutory language regarding these exceptions was drafted in such a way that, if other provisions affecting treatment of income and resources were applied to these trusts in a normal manner, the exception would have no effect . . . Because it was clearly the intent of Congress that these exceptions have meaning, the Health Care Financing Administration made an administrative decision to the effect that conflicting statutory provisions would not apply where such application would negate the mandated exceptions to the general trust provisions.”

. For the individual over the age of 65, however, “a congressional perception was created that [Medicaid] was being inappropriately manipulated and abused” (Ira Stewart Wiesner, OBRA ‘93 and Medicaid: Asset Transfers, Trust Availability, and Estate Recovery Statutory Analysis In Context, 47 Soc Sec Rep Serv 757, 758). The transfer of assets into a trust by a person over the age of 65 is considered a transfer of assets and will result in a period of in *911 eligibility for institutional medical assistance (see 42 USC § 1396p [c] [1] [A], [E]; [2] [B] [iv]; NY St Dept of Soc Servs Admin Directive 96 ADM-8, Mar. 29, 1996).

. The Department of Health is the agency charged with overseeing the State’s medical assistance program.

. This decision was the result of reargument of Matter of Lynch (703 NYS2d 653 [1999]), which was withdrawn by the court on December 23, 1999. It should be noted that where Social Security disability payments are paid to a representative payee, regulations provide that the representative payee must use the payments “only for the use and benefit of the beneficiary in a manner and for the purposes he or she determines, under the guidelines in this subpart, to be in the best interests of the beneficiary” (20 CFR 404.2035 [a]). Use and benefit, in turn, are payments “used for the beneficiary’s current maintenance” which includes the cost of obtaining food, shelter, clothing, medical care and personal comfort items (20 CFR 404.2040 [a] [1]). As the purpose of the supplemental needs trust is to provide additional support for the current use and benefit of the beneficiary, the proposed application does not appear to violate these regulations.