ARKANSAS DEP'T OF HUMAN SERVICES,
Division of Economic and Medical Services
*v.* Lillian WALTERS

93-468                                    · 866 S.W.2d 823

Supreme Court of Arkansas
Opinion delivered December 6, 1993

*Richard B. Dahlgren*, for appellant.

*G. Christopher Walthall*, for appellee.

ROBERT H. DUDLEY, Justice. Medicaid is a governmental program designed to provide assistance to the aged, blind, and disabled and to dependent children whose incomes or resources are not sufficient to meet the costs of necessary medical care and services. It is a medical welfare program for the needy. The federal government shares the cost of the program with the states, and in return, the states agree to comply with the requirements imposed by the federal government. Appellee Lillian Walters was not eligible for Medicaid because of the amount of property she owned. Mrs. Walters created a trust for her "education, support, and general welfare" while living a normal life, but, in order to become artificially impoverished and therefore eligible for Medicaid, she suspended the trustee's power to pay her maintenance if she were placed in a nursing home. She named her daughter as trustee. The settlor intended to preserve her assets for her heirs and have the government bear the expense of maintaining her in a nursing home through the provision for suspension of maintenance.

In August 1990, the settlor entered a nursing home as a paying patient. In December 1990, she applied to the county office of the Department of Human Services for Medicaid long-term benefits. In the application she stated that she had no interest in any trust. Her application was approved, and the Department began paying Medicaid benefits to the nursing home that same month. In March 1991, the Department learned of her trust and notified the county office. The county office subsequently declared her to be ineligible for Medicaid. The settlor appealed the county office's ruling to the Department's Appeals and Hearings sec-

tion. The Appeals and Hearings officer upheld the county office's ruling.

Mrs. Walters, the settlor, in her individual capacity, filed a petition in circuit court pursuant to the Administrative Procedures Act and asked for a judicial review of the Department's administrative adjudication. *See* Ark. Code Ann. § 25-15-212 (1987). In addition, she asked to be reimbursed for all benefits that had been withheld. The circuit court ruled that the action of the agency was arbitrary and capricious and that the settlor was entitled to receive future Medicaid benefits. The proof showed that during the period the county office's ruling was in effect, the trust paid the nursing home $14,758.00 for the settlor's maintenance. The trial court ordered the State to reimburse the trust the $14,758.00, even though the trust was not a party to the appeal. We reverse the ruling of the circuit court.

The trial court entered its order on February 5, 1993. Less than three months later, on April 20, 1993, Ark. Code Ann. § 28-69-102 (Supp. 1993) became effective. Subsection (b) of that act provides that a "provision in a trust . . . which . . . provides . . . for the suspension. . .of the principal, [or] income . . . of. . .the grantor . . . in the event the grantor . . . should apply for . . . nursing care . . . shall be void as against the public policy of the State of Arkansas without regard to . . . the purpose for which the trust was created. . . ." Subsection (c) of the act provides that the foregoing subsection is "remedial in nature and is enacted to prevent individuals otherwise ineligible for medical assistance benefits from making themselves eligible by creating trusts in order to preserve their assets." The emergency clause provides that the purpose of the act is to prevent ineligible individuals from artificially impoverishing themselves to receive benefits to which they are not otherwise entitled and to facilitate recovery of improperly obtained benefits, in order that the fiscal integrity of the Medicaid funds can be maintained.

The first question is whether this court can apply the statute since it was enacted after the lower court entered its order. In *Ziffrin, Inc.* v. *United States*, 318 U.S. 73, 78 (1943), the opinion of the Court answers the question as follows: "A change in the law between a nisi prius and an appellate decision requires the appellate court to apply the changed law." The Court explained

that if the law were otherwise, an administrative agency could be ordered to do future acts that would be contrary to existing legislation. Such is the situation now before us. If we did not apply the new Act, it would be necessary for us to affirm an order for the Department to act in the future in a manner contrary to the now existing legislation. We have no hesitancy in applying the Act. As a general rule we will not reverse the ruling of a trial court on an issue not presented, but the present situation falls outside the application of the rule because the issue could not have been presented to the trial court, as the Act was passed after the order was entered.

The settlor argues that applying the Act to her constitutes an unconstitutional retroactive application of the Act. It is true that the imposition of criminal liability *ex post facto* is prohibited by both the United States and State constitutions, as are Bills of Attainder, but here we are concerned with a civil act that defines eligibility for welfare. The fact that a civil statute might be retroactive is not sufficient, by itself, to invalidate an act. We have often approved retroactive application of civil statutes, especially those concerning the fiscal affairs of government. We have said the State can retroactively impose taxes. *DuLaney* v. *Continental Life Ins. Co.*, 185 Ark. 517, 47 S.W.2d 1082 (1932). The Supreme Court has said taxes can be retroactively applied. *Reinecke* v. *Smith*, 289 U.S. 172 (1933). One court has said, "The need of the Government for revenue has been deemed a sufficient justification for making a tax measure retroactive whenever the imposition seems consonant with justice and the conditions were not such as would ordinarily involve hardship." *Combs* v. *United States*, 98 F. Supp. 749, 754 (D. Vt. 1951).

The second issue is whether this remedial act should be applied. The Department's regulations in effect before the legislation was enacted did not expressly prohibit a person from artificially impoverishing himself or herself in order to become eligible for Medicaid. The General Assembly, without question, intended to put an end to such contrivances. The language of the Act is clear: Such a provision in a trust is void for determination of eligibility for Medicaid. In another Act of the same 1993 session, the General Assembly declared the public policy of this State to be that Medicaid is to be the payor of last resort. It is only after the individual has exhausted his or her own resources

that the taxpayers are to assume the financial burden of an individual's necessary medical expenses. Ark. Code Ann. § 20-77-101 (Supp. 1993).

The settlor argues that any attempt by the State to legislatively void the provision in her trust constitutes a retroactive legislative enactment. Her argument assumes that the creation of her trust is the event around which prospective and retroactive application turns, but that is not correct. The event that determines whether the application of the statute is prospective or retroactive is the determination of eligibility of the individual for welfare. *See Spires* v. *Russell*, 300 Ark. 530, 780 S.W.2d 547 (1989). That determination could be made periodically with the outcome being dependent on the amount of resources and income the individual had at that time. Applying the Act to a determination of eligibility after the effective date of the Act would be a prospective application of the statute. The Act would be applied retroactively only when a determination of eligibility is made by applying the Act back to a time before the effective date of enactment. The issue of retroactivity is limited to applying the Act to that period from the initial determination of eligibility to the date of enactment. The remainder of the opinion addresses that issue.

The general rule is that statutes are to be given only prospective application. *Arkansas Rural Medical Practice Student Loan & Scholarship Bd.* v. *Luter*, 292 Ark. 259, 729 S.W.2d 402 (1987), and cases cited therein. However, the statute at issue is a remedial statute, and remedial legislation is more often given retroactive application. *Barnett* v. *Arkansas Transp. Co.*, 303 Ark. 491, 798 S.W.2d 79 (1990). The cardinal principle for construing remedial legislation is for the courts to give appropriate regard to the spirit which promoted its enactment, the mischief sought to be abolished, and the remedy proposed. *Skelton* v. *B.C. Land Co.* 260 Ark. 122, 539 S.W.2d 411 (1976) (citing *United States* v. *Colorado Anthracite Co.*, 225 U.S. 219 (1912)). The spirit which promoted the Act, and the mischief sought to be abolished are unmistakably set out. The General Assembly said it intended to declare these trust provisions void and to allow the State to recover any benefits that might have been obtained with the use of such provisions. From this, it is apparent that the legislative intent was to give the Act retroactive effect. The final issue

then becomes whether we can validly give effect to the legislative intent.

We have said that statutes can be construed to operate retroactively so long as they do not disturb contractual or vested rights, or create new obligations. *Harrison* v. *Matthews*, 235 Ark. 915, 362 S.W.2d 704 (1962). We have indicated that it would violate due process to disturb vested rights or contractual rights. *Talkington* v. *Turnbow*, 190 Ark. 1138, 83 S.W.2d 71 (1935). We summarily hold that a retroactive application of the Act would not disturb a contractual right, or create a new obligation. Whether it disturbs vested rights is a more difficult question. One authority has written:

> Judicial attempts to explain whether such protection against retroactive interference will be extended disclose that elementary considerations of fairness and justice govern the decision. Thus it has been explained that "The term 'vested right' is not defined in either the Federal or the State Constitution; but it would seem that, generally, the concept it expresses is that of a present fixed interest which in right reason and natural justice should be protected against arbitrary state action — an innately just and imperative right that an enlightened free society, sensitive to inherent and irrefragable individual rights, cannot deny." [*Pennsylvania Greyhound Lines, Inc.* v. *Rosenthal*, 102 A.2d 587 (N.J. 1954).] As explained by an eminent constitutional authority, "as it is a right which rests upon equities, it has reasonable limits and restrictions; it must have some regard to the general welfare and public policy; it cannot be a right which is to be examined, settled, and defended on a distinct and separate consideration of the individual case, but rather on broad and general grounds which embrace the welfare of the whole community, and which seek the equal and impartial protection of the interest of all." [Cooley, *Constitutional Limitations* 745 (8th ed. 1927).]

Norman Singer, *Sutherland Statutory Construction* § 41.06, at 379-80 (5th ed. 1991).

In *Forrest City Machine Works, Inc.* v. *Aderhold*, 273 Ark. 33, 616 S.W.2d 720 (1981), we held that we would deter-

mine retroactivity and vested rights after weighing the fairness of the act and the general welfare. We stated that courts do not regard rights vested contrary to the equity and justice of the case and that one of the principal factors in determining the retroactive application of an act is the public policy set out in the act. *Id.* at 42, 616 S.W.2d at 725. If the public policy set out in the act offends our sense of justice, we will not apply it retroactively, but if it does not offend our sense of justice, we can apply it retroactively. As an illustration of a just retroactive application of an act, and one that is correlative to this case, we quoted from Bryant Smith, *Retroactive Laws and Vested Rights*, 5 Texas Law Review 231 (1927) and 6 Texas Law Review 409 (1928), and asked what of a law that, by legitimizing an illegitimate child, takes property from an heir who before the law had a perfect title in every respect and gives it to a remote purchaser from the illegitimate? *Id.* at 40, 616 S.W.2d at 724. We said that if the term "vested" meant anything, this law takes away a vested right, and yet, all such laws have been sustained on the basis of public policy.

██ Here, the settlor examined the state regulations in effect at the time she created her trust and decided that she could artificially impoverish herself so that, at the time she applied for Medicaid, she would be found to be eligible for benefits. However, she, and others who did the same thing, knew, or should have known, they did not gain a fixed vested interest in future Medicaid payments since the government could repeal the program at any time. The settlor and others similarly situated understood they were taking some risk by placing their property in trust for a contrived purpose, and they understood, or should have understood, that this risk would involve hardship if the program were changed or repealed. The only consideration of fairness in favor of the settlor is that, in reliance on the absence of a prohibition in the regulations, she conveyed her property to a trust. This consideration is of only slight weight since a settlor should have understood the risk he or she was taking in this surreptitious act. On the other hand of the scales of fairness, is the fact that the settlor intended for the taxpaying public to maintain her in a nursing home under the guise that she was impecunious so that her assets would go to her heirs. The General Assembly has voided such provisions in trusts as a matter of public policy in order to preserve the fiscal integrity of the program. Without question,

the Act serves the general welfare of the public. In this weighing, the elementary considerations of fairness and justice strongly prevail in favor of the retroactive application of the Act. Just as the need of the government for tax revenue for the general welfare is a sufficient justification for making a tax measure retroactive, the need of the government to stop chicanery and to preserve the fiscal integrity of the Medicaid program is a sufficient justification for making this measure retroactive. Accordingly, we hold that the legislative intent may be given effect, and the Act may be applied retroactively.

Reversed and remanded.

BROWN, J., concurs.

ROBERT L. BROWN, Justice, concurring. I agree with the result but would not apply Act 1228 of 1993 retroactively on the basis that it is "remedial." Most legislative enactments could be construed as remedial in one way or another, and the retroactive application of state law must be employed in the rarest of instances.

Rather, the device used by the appellee was a subterfuge and directly contrary to the overall intent of the Medicaid program to provide welfare benefits to the aged who are impoverished. The fact that a precise state regulation did not prevent the appellee's artifice is not determinative in my opinion. Her trust was clearly at odds with the purpose behind the Medicaid program and that is enough to mandate a reversal.