■ In the Matter of MENTAL HYGIENE LEGAL SERVICE, on Behalf of THOMAS C., Appellant, v KATHERINE A. BISHOP, as Guardian of THOMAS C., Respondent. (Proceeding No. 1.) (And Another Related Proceeding.) In the Matter of THOMAS C., a Disabled Person, Appellant. BRIAN P. KRZYKOWSKI, as Guardian of the Property of THOMAS C., Respondent. (Proceeding No. 2.) [748 NYS2d 617] —Peters, J. Appeals (1) from an order of the Surrogate's Court of Rensselaer County (Hummel, S.), entered May 23, 2001, which, inter alia, denied petitioner Mental Hygiene Legal Service's application pursuant to EPTL 7-1.12 to establish a supplemental needs trust on behalf of Thomas C., and (2) from that part of a decree of said court, entered August 20, 2001, which, inter alia, approved the terms of a supplemental needs trust established by petitioner Brian P. Krzykowski.

Thomas C., born April 30, 1944, suffers from mental retardation and Down's Syndrome. Subsequent to his mother's death in 1983, he lived independently and was employed in the maintenance department at the Hudson Valley Community College where he earned approximately $20,000 per year. By decree dated July 26, 1989, respondent Katherine A. Bishop was appointed as guardian of his property pursuant to SCPA article 17-A. Approximately eight years later, Thomas retired from his job and Bishop arranged for his admission into both a community residence, operated by respondent Rensselaer County Chapter of the New York State Association of Retarded Children, Inc. (hereinafter ARC), and a day treatment center with the Eddy Daybreak Program. At such time, his assets totaled approximately $228,000.

Following Thomas's admission into the aforementioned residence and treatment center, Bishop sought and secured an ex parte order directing that $31,247.80 be paid to ARC out of Thomas's assets for services rendered. Shortly thereafter, in

October 1998, Bishop applied for, inter alia, permission to be discharged as his guardian and for an order directing that a guardian ad litem be appointed to protect his interest in that proceeding. The application was precipitated by Bishop's recognition that Thomas's physical condition was declining. So recognizing, she sought legal assistance from attorney Edward Malone to review varied alternatives for Thomas, which included the possibility of establishing a self-settled Medicaid qualifying supplemental needs trust (hereinafter SNT), as well as her appointment as the guardian of his person. After reviewing the advice received from Malone, Bishop decided not to pursue a guardianship proceeding and thereafter petitioned Surrogate's Court to, inter alia, resign as the guardian of his property.

Petitioner Brian P. Krzykowski was appointed guardian ad litem for Thomas in this proceeding. In August 2000, he filed an application to have ARC appointed as the guardian of Thomas's person and for himself to be appointed as guardian of Thomas's property. Petitioner Mental Hygiene Legal Service (hereinafter MHLS) filed objections to the final accounting submitted by Bishop on the ground that Bishop breached her fiduciary responsibilities by not establishing an SNT and instead utilized Thomas's assets to pay for services rendered by ARC. Soon thereafter, MHLS commenced the first proceeding, by order to show cause dated March 23, 2001, seeking, inter alia, the establishment of a SNT on Thomas's behalf; ARC cross-moved for payment of its outstanding bill.

In May 2001, Surrogate's Court granted, inter alia, Bishop's application to be discharged as the guardian of Thomas's property and denied MHLS' application for the establishment of an immediate SNT. The court reasoned that the petition was defective, inter alia, since it did not provide for a named settlor, contained no oath of a settlor and the proposed trust had not been approved by the Rensselaer County Department of Social Services. It noted, however, that in reaching such decision, MHLS consented to investigate whether Thomas was Medicaid eligible and that such findings were to be reported to the court within 60 days of the court's decision so that it could thereafter consider an application, if made by Krzykowski, to establish a SNT. MHLS, on behalf of Thomas, appeals from that order.

The second proceeding, commenced in August 2001 by Krzykowski, sought the establishment of a SNT. By decree dated August 20, 2001, Surrogate's Court approved the SNT created by Krzykowski on Thomas's behalf. Thomas im-

mediately appealed from that part of the decree approving the proposed terms of the SNT. Both appeals were joined by this Court. In May 2002, Surrogate's Court approved and ordered amendments to the SNT to which all parties agreed and, thereafter, stipulated that the later appeal was moot.

Focusing solely on Surrogate's Court's earlier determination to deny the creation of an immediate SNT due to, inter alia, the procedural errors enumerated, we initially note that it is undisputed that Thomas met the statutory requirements for such trust to be considered: he is a person with a severe and chronic or persistent disability, under the age of 65, who was willing to grant the State the remainder interest in the trust assets up to the amount of all public assistance provided that was remaining at the time of his death (*see* 42 USC § 1396p [d] [4] [A]; Social Services Law § 366 [2] [b] [2] [iii] [A]; EPTL 7-1.12 [a] [5]). However, the decision of whether to grant a SNT is a discretionary determination with the court (*see* EPTL 7-1.12 [a] [5]; *DiGennaro v Community Hosp. of Glen Cove*, 204 AD2d 259, 260). While we agree that the procedural errors identified were without legal consequence since not only was the Rensselaer County Department of Social Services properly notified of MHLS' application (*see* 18 NYCRR 360-4.5 [b] [5] [iii] [a]), but also the court possesses the authority to create and/or settle an SNT on behalf of a disabled individual sua sponte (*see* 42 USC § 1396p [d] [4] [A]; Social Services Law § 366 [2] [b] [2] [iii] [A]; EPTL 7-1.12 [a] [5]), the court's decision to deny the application was entirely proper.

The challenge as to whether ARC, a respondent in this matter, should be deemed an "aggrieved party" is not determinative. The record reveals that prior to the application, Thomas's assets approximated $250,000, his supplemental needs had not exceeded $3,000 per year and he was receiving an annual pension in the amount of $18,000. The affidavit of Bishop detailed that, through her 12-year relationship with Thomas, she felt that he clearly desired to retain as much financial independence and self determination as possible which could only be effectuated by ensuring that he had greater options in choosing a nursing home if he was not, at that time, Medicaid funded. For all of these reasons, Surrogate's Court agreed that it was not immediately necessary to create a SNT, only that it was necessary to further investigate whether such a trust would be in Thomas's best interest. To that extent, it ordered MHLS to investigate whether Thomas was Medicaid eligible. Upon its appointment of Krzykowski as Thomas's guardian, the court specifically indicated that it would

reconsider an application made by Krzykowski if it were determined that an SNT would be in Thomas's best interest. Hence, for these reasons, the court's initial determination that the creation of an SNT was not immediately necessary was not an abuse of discretion.

Crew III, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order entered May 23, 2001 is affirmed, without costs. Ordered that the decree entered August 20, 2001 is dismissed, as moot, without costs.