OPINION OF THE COURT
Green, J.
Petitioner, as administratrix of the estate of her husband, Ronald Woolworth (decedent), commenced this proceeding seeking, inter alia, an order confirming the settlement of an action seeking damages for decedent’s wrongful death and conscious pain and suffering, and approving petitioner’s proposed distribution of the proceeds of that settlement. Surrogate’s Court granted the relief sought in the petition, with the exception of the proposal that the Surrogate approve a supplemental needs trust (SNT) funded by petitioner’s entire share of the net proceeds of the settlement. We conclude that the Surrogate should have granted the petition in its entirety, thereby approving the proposed SNT for the benefit of petitioner, who without dispute is a disabled person eligible for an SNT.
I
Decedent died intestate on March 15, 2006, survived by petitioner and two adult daughters. Pursuant to SCPA 702 (1), the Surrogate granted petitioner limited letters of administration to prosecute a cause of action in decedent’s favor for wrongful death and/or conscious pain and suffering. She thereafter commenced an action alleging negligence and medical malpractice against physicians who treated decedent and the medical facility where he sought treatment in the months preceding his death. That action settled before trial for $737,500. Supreme Court authorized the settlement and ordered that the balance remaining after payment of attorney’s fees, disbursements and uncovered medical expenses was payable to petitioner as administratrix of decedent’s estate.
The balance, which was the amount of $516,876.60, constituted decedent’s entire estate. Pursuant to EPTL 4-1.1 (a) (1), petitioner’s share was calculated to be $283,438.30 and each daughter’s share was calculated to be $116,719.15. Petitioner thereafter sought, inter alia, permission to distribute the shares *162 of the daughters directly to them, and to have her entire share deposited into an SNT. After the petition was filed, the Surrogate and petitioner’s attorney exchanged correspondence concerning the proposed SNT. The attorney explained in a letter to the Surrogate that petitioner receives benefits from the Oswego County Department of Social Services (DSS), and she did not want her inheritance to affect her eligibility for such benefits. The attorney also forwarded to the Surrogate a “Waiver and Consent” executed by DSS consenting to the establishment and terms of the proposed SNT. The Surrogate responded in a letter stating, inter alia, that “[w]hile [he] understood] the underlying reason for the request, the present sheltering of ‘available resources’ and payback to the government providers only a future possibility, [he could] not in good conscience approve the transfer of the entire balance [i.e., petitioner’s intestate share] to [an SNT].” The Surrogate further stated that he was willing to approve an SNT funded with only $100,000 of petitioner’s share, and he would add a provision for an annual accounting to the proposed trust instrument. In response, petitioner’s attorney agreed to add the annual accounting provision but would not consent to the Surrogate’s proposed limitation of $100,000 to fund the trust because that limitation would effectively render petitioner ineligible for Medicaid. In his final correspondence with petitioner’s attorney concerning the SNT, the Surrogate wrote:
“In the end, I believe that I have a responsibility to the public fisc that takes priority. I recognize that to have someone pay from their own resources when somehow, [some way] we can get the ‘government’ to pay is an old-fashioned thought but it is a thought that I agree with.”
The Surrogate further stated that “[i]f [his] only choice is to establish a trust with the entire amount or to decline the request [his] inclination would be the latter.”
Consistent with that “inclination,” the Surrogate denied the petition to the extent that it sought the approval of an SNT funded by petitioner’s entire share of the net proceeds of the settlement. We now conclude that the order insofar as appealed from should be reversed and the petition granted in its entirety.
II
An SNT “is a ‘discretionary trust established for the benefit of a person with a severe and chronic or persistent disability’ *163 (EPTL 7-1.12 [a] [5]) that is designed to enhance the quality of the disabled individual’s life by providing for special needs without duplicating services covered by Medicaid or destroying Medicaid eligibility” (Cricchio u Pennisi, 90 NY2d 296, 303 [1997]; see Matter of Abraham XX., 11 NY3d 429, 434 [2008]). It is a planning device authorized by federal and state law to shelter the assets of a severely disabled person “for the dual purpose of securing or maintaining eligibility for state-funded services, and enhancing the disabled person’s quality of life with supplemental care paid by his or her trust assets” (Abraham XX., 11 NY3d at 434). The SNT is designed to “addresst ] the unique and difficult situation faced by severely disabled individuals with assets that are sufficient to end their Medicaid eligibility but insufficient to account for their medical costs” (id. at 437).
Under the pertinent statutes, 42 USC § 1396p (d) (4) (A) and Social Services Law § 366 (2) (b) (2) (iii) (A), neither the corpus nor the income of an SNT is considered a resource or income available to the disabled trust beneficiary (see Abraham XX., 11 NY3d at 435; Cricchio, 90 NY2d at 303; Matter of Kennedy, 3 Misc 3d 907, 909-910 [2004]; Matter of Goldblatt, 162 Misc 2d 888, 889 [1994]; see also 18 NYCRR 360-4.5 [b] [5] [i] [a]).
Such favorable treatment is extended to an SNT as long as the trust documents are in conformance with the requirements of EPTL 7-1.12 (a) (5) (see Cricchio, 90 NY2d at 303), as well as the applicable regulations of the Department of Social Services (see Social Services Law § 366 [2] [b] [2] [iii], [iv]). In addition, an SNT is exempted from the general rules governing available resources and Medicaid eligibility when the recipient is “disabled,” as that term is defined in the Social Security Act (42 USC § 1382c [a] [3]), and the SNT contains
“[t]he assets of such a disabled individual [and] was established for the benefit of the disabled individual while such individual was under sixty-five years of age by a parent, grandparent, legal guardian, or court of competent jurisdiction, if upon the death of such individual the state will receive all amounts remaining in the trust up to the total value of all medical assistance paid on behalf of such individual” (Social Services Law § 366 [2] [b] [2] [iii] [A]; see 42 USC § 1396p [d] [4] [A]).
Here, there is no dispute that petitioner is disabled and under 65 years of age, or that the proposed SNT is in conformance *164 with the requirements of EPTL 7-1.12 (a) (5) and provides the State of New York with the remainder interest described in Social Services Law § 366 (2) (b) (2) (iii) (A). Petitioner, however, is an adult with no parent, grandparent, or legal guardian to establish the SNT for her benefit, and she therefore sought the assistance of the Surrogate with respect to the SNT. We recognize that the decision whether to establish or approve an SNT is a discretionary determination for the Surrogate (see Matter of Mental Hygiene Legal Serv. v Bishop, 298 AD2d 644, 646 [2002]; Perez v Rodino, 184 Misc 2d 855, 857 [2000]), and that the Surrogate had a legitimate concern that “the ultimate goal of Medicaid [is] that the program ‘be the payer of last resort’ ” (Matter of Costello v Geiser, 85 NY2d 103, 106 [1995]; see Cricchio, 90 NY2d at 305). We conclude, however, that the Surrogate abused its discretion in conditioning its approval of the SNT upon petitioner’s agreement to limit the funding of the trust to $100,000.
The federal and state legislation governing the establishment and operation of SNTs allows a disabled person who receives a lump sum of money to maintain Medicaid eligibility by transferring the funds into an SNT, provided that, in exchange, the State is given a priority interest in the balance of the SNT upon the beneficiary’s death (see Rosenberg, Supplemental Needs Trusts for People with Disabilities-. The Development of a Private Trust in the Public Interest, 10 BU Pub Int LJ 91, 136). The SNT thus represents a “bargain struck between the SNT beneficiary and the State” (Abraham XX., 11 NY3d at 436). The terms of that bargain are set forth by the Court of Appeals in Abraham XX.:
“The SNT is available only to applicants under the age of 65 with severe disabilities as defined by statute. Unless the applicant placed excess assets in the Medicaid SNT for supplemental care, he or she would no longer be eligible for Medicaid, thus relieving the State of a substantial financial burden. In order to further Medicaid’s purpose of providing medical assistance to needy persons, the State agrees to continue paying Medicaid costs—in instances where it would otherwise be relieved of this obligation—in exchange for the possibility of reimbursement upon the recipient’s death. The State in a sense is like an insurer calculating risk. For every recipient who depletes the trust before death, the *165 State can expect some trusts to have sufficient assets upon a recipient’s death to offset the additional cost of continuing Medicaid payments for these severely disabled individuals who otherwise would be ineligible. Moreover, the State’s right to reimbursement occurs only upon the death of the beneficiary—at a time when the life-enhancing purpose of the trust can no longer be effectuated. The Medicaid SNT reflects a policy decision to balance the needs of the severely disabled and the State’s need for funds to sustain the system” {id. at 436-437).
In refusing to approve the funding of the proposed SNT with a sum greater than $100,000, the Surrogate skewed the balance fashioned by the Legislature in favor of the State and to the detriment of petitioner. By placing that limitation on the funding of the SNT, the Surrogate ensured that petitioner would lose her eligibility for Medicaid, a result that is inconsistent with the public policy underlying SNTs and the Surrogate’s function in approving and supervising their establishment:
“[I]t is appropriate for the [Surrogate] to seek assurance that a proposed [SNT] complies with the controlling law and rules regarding Medicaid eligibility .. . This is consistent with the function of the [Surrogate] to assure that the best interests of the incapacitated person are promoted. It would be a clear dereliction of that duty for the [Surrogate] to deliberately overlook provisions of a proposed [SNT] if such provisions were inconsistent with statutory guidelines and thus would bar an incapacitated person from receiving Medicaid benefits by its establishment. To do so would permit the diverting of assets from the ownership or title of the incapacitated person to another legal entity with no consequent benefit to the incapacitated person” {Matter of McMullen, 166 Misc 2d 117, 119 [1995]; see Goldblatt, 162 Misc 2d at 890).
Finally, we note that none of the pertinent statutes or regulations supports a limitation upon the amount of money that may be used to fund an SNT, and that none of the cases construing those statutes and regulations has in fact imposed such a limitation (see e.g. Abraham XX., 11 NY3d at 433 [$2.17 million]; Sanango v New York City Health & Hosps. Corp., 6 AD3d 519 [2004] [approximately $1.8 million]; Mental Hygiene Legal Serv., 298 AD2d at 646 [approximately $250,000]; Matter of Kamp, 7 *166 Misc 3d 615 [2005] [approximately $187,000]). Indeed, it appears that Congress considered and rejected a limitation on the amount of money used to fund an SNT (see Rosenberg, 10 BU Pub Int LJ at 129). In our view, the proposed SNT funded by petitioner’s entire intestate share appropriately protects the needs and interests of both petitioner and the State, consistent with the purpose of the Medicaid SNT and the public policy underlying its creation.
Accordingly, we conclude that the order insofar as appealed from should be reversed and the petition granted in its entirety.
Scudder, EJ., Peradotto, Lindley and Gorski, JJ., concur.
It is hereby ordered that the order insofar as appealed from is unanimously reversed, on the law, without costs, and the petition is granted in its entirety.