SLIP OPINION

Cite as 2016 Ark. 229

# SUPREME COURT OF ARKANSAS

No. CV-15-902

| | |
|---|---|
| IN THE MATTER OF JAMES S. CORN, A DISABLED PERSON | **Opinion Delivered** June 2, 2016 |
| | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CV-15-1550] |
| | HONORABLE ALICE S. GRAY, JUDGE |
| | REVERSED AND REMANDED. |

**PAUL E. DANIELSON, Associate Justice**

Appellant James S. Corn, age fifty-three, brings this appeal from an order of the Pulaski County Circuit Court denying Corn's petition to establish a special-needs trust pursuant to 42 U.S.C. § 1396p(d)(4)(A). Corn is disabled because of a head injury from which he suffers short-term memory loss. Because of the severity of his injury, he receives Social Security Disability (SSD) and Supplemental Security Income (SSI). Corn's eligibility makes him automatically eligible for Medicaid. However, SSI has an asset test which states that Corn would become ineligible if he were to have assets of more than $2,000. Because of this, Corn's partner, Ms. Yelvington, now deceased, established a special-needs trust for him.

Yelvington also designated Corn as a beneficiary on life insurance policies and her bank accounts. There is approximately $260,000 that was not transferred into the special-needs trust created by Yelvington, and because Corn is designated as the beneficiary on these assets,

SLIP OPINION

they would pass directly to Corn upon Yelvington's death. Because these assets would be passing directly to Corn rather than through a special–needs trust, Corn would be ineligible to receive SSI benefits.

In order to prevent this, Corn attempted to create a trust pursuant to 42 U.S.C. § 1396p(d)(4)(A) (hereinafter "D4A trust"). This statute provides that assets do not count toward the asset limit if the assets are in a trust that

> contain[s] the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.

42 U.S.C § 1396p(d)(4)(A).

On April 10, 2015, Corn filed a "Petition to Establish a 42 U.S.C. § 1396p(d)(4)(A) Special Needs Trust" for his benefit. In that petition, Corn stated that he is entitled, pursuant to the statute, to use a safe-harbor special-needs trust to hold his inherited monies to preserve his eligibility for public benefits. Corn attached a copy of the proposed "James Corn D(4)(A) Special Needs Trust" to the petition and stated that the trust meets all of the criteria for the establishment of a (D)(4)(A) trust, including (1) that Corn is under the age of 65; (2) that he is disabled pursuant to the provisions of the Social Security Act; (3) that the trust will be funded with Corn's assets; (4) that Corn is the sole beneficiary of the trust; (5) that the trust will be established by the court as allowed under the statute; (6) that the trust contains the requisite payback language to the State of Arkansas for benefits paid for the primary beneficiary's care under the Medicaid program; (7) that the trust is irrevocable; (8) that the

trust contains a spendthrift clause; and (9) that Corn cannot direct the trustee to use trust principal or income for his support and maintenance. "Schedule A" of the special-needs trust includes approximately $260,000 in assets from Yelvington's life insurance policies and bank accounts on which Corn is the designated beneficiary.

A hearing was held on June 2, 2015, in the Pulaski County Circuit Court. At the time of the hearing, Yelvington had passed away and her estate was in probate. Corn had not yet received any funds from her estate or from her beneficiary designations. At the hearing, Corn's attorney stated that when Yelvington set up the special-needs trust for Corn, she unintentionally left out a number of assets that would pass directly to Corn. The circuit court asked counsel for Corn what other assets were in the special-needs trust set up by Yelvington. Counsel for Corn stated that he was unprepared at that time to share a report of the assets passing through Yelvington's trust administration or probate. The circuit court then stated as follows:

> I can tell you that what my concern has started to be in these cases. You know, I've had some of these where there's $40,000 in the special needs trust; I've had some where there's $30,000; I've had others that had already been set up prior to me seeing them. But I'm starting to have a public policy issue with them because people out here who are making $30,000 a year and paying taxes, their tax money is going to help provide these benefits that your client is trying to keep. And, at the same time, if I'm helping him protect 200-something thousand dollars over here so that he can keep those benefits that poor people are having to pay for, that becomes an issue for me.

When counsel for Corn asked the circuit court if they needed to get a continuance, the circuit court stated,

> Well, what I'm going to do – we're here today. We had it on the docket. And most of what I know I've had to kind of drag out of you today. And if this is all you're

presenting, I'm going to deny it. And I'm going to let you file your motion for reconsideration within ten day[s] . . . [a]nd show me what you have.

At the conclusion of the hearing the circuit court stated, "I'm going to deny it. You all need to make your case for it in the motion for reconsideration."

The circuit court entered the order denying Corn's petition that same day. On June 11, 2015, Corn filed a motion for reconsideration and brief in support. The motion for reconsideration was denied on July 10, 2015. In its order denying Corn's motion for reconsideration, the circuit court found that the establishment of the trust would be against Arkansas public policy and that there was insufficient evidence presented to support that a special–needs trust should be established. On August 7, 2015, Corn filed a timely notice of appeal.

In this case, the circuit court ruled that the D4A trust was against public policy of the State of Arkansas. We disagree. D4A trusts are clearly provided for by 42 U.S.C. § 1396p(d)(4)(A), and although a state's participation in the federal Medicaid program is voluntary, states that choose to participate must comply with the requirements of the federal Medicaid statute. *Ark. Med. Soc'y, Inc. v. Reynolds*, 6 F.3d 519 (8th Cir. 1993). Therefore, the Arkansas Department of Human Services, in its Medical Services Policy Manual, has issued rules that comply with 42 U.S.C. § 1396p(d)(4)(A). Rule 016.20.1-H of the policy manual states:

*TRUSTS ESTABLISHED 8/11/93 AND LATER*

1. General Provisions

. . . .

4. Trusts Not Considered an Available Resource

A trust will not be considered an available resource to an individual if it meets the criteria of one of the 3 trusts described below:

a. A trust containing the resources of an individual under age 65 who is disabled, as determined by SSI or MRT, and which has been established for the benefit of the individual by a parent, grandparent, legal guardian of the individual, or a court, if the state will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual.

While this court has not before addressed the establishment of D4A trusts, Corn points to other jurisdictions that have held that the creation of D4A trusts actually serves public policy considerations. Specifically, Corn cites to *State v. Hammans*, 870 N.E.2d 1071 (Ind. Ct. App. 2007). In *Hammans*, the Indiana Court of Appeals observed that the disability trust at issue was drafted to comply with section 1396p(d)(4)(A) and stated that

> we recognize that the exception created by 42 U.S.C. § 1396p(d)(4(A) serves important public policy considerations; namely, that reimbursing the State for funds it has expended through Medicaid for medical assistance increases the availability of funds for the future medical assistance to other needy persons.

*Id*. at 1082 (citing *Estate of Jobe*, 590 N.W.2d 162 (Minn. Ct. App. 1999)).

Corn also relies on *Matter of Gillette*, 756 N.Y.S.2d 835 (N.Y. Sup. Ct. 2003), which involves facts similar to the case before us. In *Gillette*, a disabled person petitioned the court for the establishment of a special-needs trust for his own benefit because his parents and grandparents were deceased, and although he was disabled, he was not in need of a guardian. The court stated,

> [T]here is no logical reason that the disabled person cannot be the grantor and petition the court to establish the trust, as long as the trust has not been signed by the trustee and funded before submission to the court. If all the requirements to create a trust

have not been completed, the trust is not established. Even though the grantor is the disabled person, the court can entertain the petition and establish the trust by court order, so long as the creation of the trust has not been completed before the petition is submitted to the court. In this way, the expense of a guardianship proceeding can be avoided for a person who is disabled, but not otherwise in need of a guardian.

*Id*. at 838.

Similarly, in *In re Woolworth*, 903 N.Y.S.2d 218 (N.Y. App. Div. 2010), a disabled petitioner, as administratrix of the estate of her husband, petitioned to establish a special-needs trust to be funded with her entire share of the proceeds she received ($283,438.30) as a result of a settlement in a wrongful-death action on behalf of her deceased husband. Petitioner was disabled and under the age of 65 but did not have a parent, grandparent, or guardian who could establish a D4A trust on her behalf. *Id*. The Surrogate's Court ruled that it would only allow the special-needs trust to be funded with $100,000 of the petitioner's share and that a provision would be added for an annual accounting to ensure that the amount did not go over the $100,000 limit. *Id*. The New York Supreme Court, Appellate Division, reversed, holding that the Surrogate abused its discretion in conditioning its approval of the special-needs trust upon the petitioner's agreement to limit the funding to $100,000:

In order to further Medicaid's purpose of providing medical assistance to needy persons, the State agrees to continue paying Medicaid costs—in instances where it would otherwise be relieved of its obligation—in exchange for the *possibility* of reimbursement upon the recipient's death.

*Id*. at 218 (quoting *Matter of Abraham XX*, 900 N.E.2d 136, 140 (N.Y. Ct. App. 2008)) (emphasis in original).

Here, the circuit court relied on four cases to support its ruling that Corn's proposed D4A trust is against public policy: *Thomas v. Ark. Dep't of Human Servs.*, 319 Ark. 782, 894 S.W.2d 584 (1995); *Ark. Dep't of Human Servs. v. Wilson*, 323 Ark. 151, 913 S.W.2d 783 (1996); *Ark. Dep't of Human Servs. v. Walters*, 315 Ark. 204, 866 S.W.2d 823 (1993); and *In re Ruby G. Owen Trust*, 2012 Ark. App. 381, 418 S.W.3d 421. These cases applied Act 1228 of 1993, codified at Arkansas Code Annotated section 28-69-102 (Supp. 1993), in holding that "[t]he public policy behind the Act is absolutely beyond dispute—trusts may not be created and used as devices to sequester resources for the purpose of qualifying individuals otherwise ineligible for Medicaid assistance." *See Thomas*, 319 Ark. at 789, 894 S.W.2d at 588 (citing Ark. Code Ann. § 28-69-102(b) (Supp. 1993)); *Walters*, 315 Ark. 204, 866 S.W.2d 823.

The difference between the trusts in these cases and the case at hand is that those cases did not include payback provisions to the State. They simply were not D4A trusts. D4A trusts have a statutory requirement that the state be reimbursed for any medical expenditures upon the death of the disabled beneficiary. 42 U.S.C. § 1396p(d)(4)(A). D4A trusts are provided for by federal statute and by the rules of the Arkansas Department of Human Services policy manual. *See* Arkansas's Medical Services Policy Manual Rule 016.20.1-H. Furthermore, we see no logical reason why a disabled person cannot be the grantor and petition the court to establish the trust as long as the requirements of 42 U.S.C. § 1396p(d)(4)(A) have been met. Accordingly, we hold that the circuit court erred in finding that the establishment of a D4A trust in this case would be against Arkansas public policy.

Corn's second point on appeal is that the circuit court erred in finding that there was insufficient evidence to support the establishment of a D4A trust. At the hearing, Corn testified to his disability, stating that he had a head injury, which caused memory loss, and that he has been determined disabled by the Social Security Administration and receives SSD and SSI. The circuit court stated at the hearing that "there's no disability, no guardianship, or anything like that." The court also asked about the assets of Yelvington's trust, which counsel for Corn said he did not have at the time because Corn was asking that only the assets outside of the trust established by Yelvington be put in the D4A trust. Counsel presented "Schedule A" attached to the proposed special-needs trust. Schedule A is a list of assets Corn proposed to place into the requested D4A trust. At the conclusion of the hearing, after denying Corn's petition, the circuit court told Corn's counsel that they could file a motion for reconsideration within ten days "[a]nd show me what you have" and that counsel needed to "make [their] case for it in the motion for reconsideration."

In his motion for reconsideration and brief in support, Corn attached letters from the Social Security Administration regarding his SSI payments, explained the factors that must be met in order to qualify for a D4A trust, and presented his argument that he had met those requirements. In its order denying Corn's motion for reconsideration, the circuit court stated that, while Corn testified that he was disabled, "no one presented written substantiation that [Corn] was disabled or receiving Social Security benefits." We find that through his testimony at the hearing and by attaching letters from the Social Security Administration to his motion for reconsideration, Corn provided the circuit court with sufficient evidence of

his disability. Therefore, we hold that the circuit court erred in finding that there was insufficient evidence that Corn was disabled.

In conclusion, we hold that the circuit court erred in ruling that the establishment of a D4A trust is against Arkansas public policy and that the circuit court erred in finding that there was insufficient evidence of Corn's disability. We reverse the circuit court's order and remand this case for a determination of whether the proposed D4A trust meets the requirements set forth in 42 U.S.C. § 1396p(d)(4)(A).

Reversed and remanded.

BAKER, HART, and WOOD, JJ., dissent.

**RHONDA K. WOOD, Justice, dissenting.** I dissent. James Corn has attempted an end-run around federal Medicaid law and Arkansas trust law. While I agree with the majority that the trial court erred in its particular analysis, I would still affirm the circuit court because, as a matter of law, the trust cannot be created in this case. First, a "D4A" trust cannot be self-settled. Second, the circuit court cannot settle a trust, in the first instance, with assets that are controlled by someone else.

Neither Corn nor the majority makes any attempt to describe how we should review this case.[1] In any event, courts of equity traditionally had jurisdiction over trusts. *Anna Flippin Long Trust v. Holk*, 315 Ark. 112, 113, 864 S.W.2d 869, 869 (1993). We review cases that

---

[1] Corn has thus failed to comply with our briefing rules: "For each issue, the applicable standard of review shall be concisely stated at the beginning of the discussion of the issue." Ark. Sup. Ct. R. 4-2(a)(7) (2015).

traditionally sounded in equity de novo. *See Burnette v. Perkins & Assocs.*, 343 Ark. 237, 239, 33 S.W.3d 145, 148 (2000). Applying this standard, we "review both law and fact . . . [and] may always enter such judgment as the chancery court should have entered upon the undisputed facts in the record." *Id.* This is an especially important consideration here: not only is this a one-brief appeal, but this is a one-party case. On a de novo review, we can clearly affirm, albeit for a different reason from the circuit court

The most fundamental reason to deny Corn's petition is that it is contrary to the intent of the federal law. Here, Corn attached a predrafted trust document to his petition entitled "James Corn D(4)(A) Special Needs Trust." The document provided that the trust was irrevocable, with the Pulaski County Circuit Court acting as settlor. However, the document stated that the trust "is established with James Corn's assets and James Corn is the sole beneficiary of the trust."

A "D4A" trust is authorized under the Omnibus Reconciliation Act of 1993. Pub. L. No. 103–66, 107 Stat. 312 (1993). As a threshold matter, the Act provides that assets contained in a self-settled trust are countable or "available" for the purposes of determining Medicaid eligibility. 42 U.S.C. § 1396p(d)(1)–(3). That is, if a beneficiary places his own assets in a trust, those assets are counted against him. However, these rules do not apply to assets held in trusts that meet certain requirements. 42 U.S.C. § 1396p(d)(4)(A). One of these requirements is that the trust is established by a parent, grandparent, legal guardian, or court. In other words, a "D4A" trust cannot be self-settled. If Congress wanted to allow the trust to be self-settled (allowing the establishment of a "D4A" trust by the intended beneficiary

himself), it would have included the beneficiary in the list of those who could establish the trust. However, it did not. For a court to do so upon demand would virtually write an additional term into federal law, which in the same Act provided that assets in self-settled trusts were countable for purposes of Medicaid eligibility.

Another reason to deny the petition is that the circuit court lacked the capacity to act as settlor of the trust. In an attempt to evade federal law's counting of assets in self-settled trusts, Corn purported to have the circuit court act as settlor. However, the Arkansas Trust Code provides that a trust may be created only if "the settlor has capacity to create a trust." Ark. Code Ann. § 28-73-402. "A person has capacity to create an irrevocable inter vivos trust by transfer to another or by declaration to the same extent that the person has capacity to transfer the property inter vivos free of trust in similar circumstances." Restatement (Third) of Trusts § 11(3) (2003). "One cannot create a trust of property of which another has sole and complete ownership." *Id.* § 41 cmt. B.

The circuit court thus lacked the capacity to create the trust because the court couldn't otherwise transfer the assets in question. The circuit court didn't possess or own the assets, Corn did. This was reflected in the trust document, which stated that the trust was funded with Corn's own assets. Because Corn solely and completely owned the money, only he could settle a trust with that property. But because assets in a self-settled trust are countable for Medicaid eligibility, Corn creatively petitioned the court to "settle" the trust in his stead. However, the court couldn't create a trust using property that belonged solely to James Corn and was outside the court's jurisdiction. *See Draper v. Colvin*, 779 F.3d 556, 563 (8th Cir.

11

2015) ("When a trust is formed with an initial, existing *res*, like the trust at issue here . . . traditional trust law hold[s] that someone with a legal interest in the entire *res* must be involved in the trust's creation; otherwise, the trust is invalid."). Therefore, the trust, as presented to the court, was invalid on its own terms.

Certainly, the majority is correct that in some circumstances, a court can create a "D4A" trust; otherwise, the court would not be listed as an authorized settlor in section 1396p(d)(4)(A). What the majority ignores is that a court must create a trust consistent with the Arkansas Trust Code. In the precedents from other jurisdictions that say a court can settle a trust, the court already had jurisdiction over the person or things involved. For example, a Georgia case noted that a court could be the settlor of a trust because it "had legal capacity to transfer title to the property." *Hayes v. Clark*, 530 S.E.2d 38, 39 (Ga. App. 2000). But there, an earlier court had created the trust for a minor who had received a money judgment resulting from a car accident. *Id.* Under those circumstances, it is clear that the court did have capacity to transfer legal title: the court obtained jurisdiction over the defendant, established that defendant's liability for negligence, and ordered the defendant to pay the plaintiff money damages via a trust instrument. Similarly, in *State v. Hammans*, 870 N.E.2d 1071, 1074 (Ind. Ct. App. 2007) an Indiana case cited by the majority, Nicholas Hammans was disabled in a car accident. Hammans's parents, acting as the guardians of Hammans's estate, filed a lawsuit on his behalf. The case settled and the proceeds were transferred into the guardianship estate, which was supervised by the trial court. The trial court then created a special–needs trust for Hammans.

Likewise, a probate court could certainly create a D4A trust when disbursing assets under a decedent's estate. Yet the assets here passed to Corn outside of probate.[2] And in other instances, a defendant may establish a trust for the plaintiff's benefit with court approval following a settlement agreement. Cf. *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1175 (10th Cir. 2009). In that situation, the defendant, not the court, is the settlor. But that is an entirely different question from whether a person can petition the court, in the first instance, to create a trust, for himself, with his own money. Corn has failed to present a single Arkansas case or statute that would allow the court to create a trust upon petition alone, which is otherwise contrary to the Arkansas Trust Code.

Under the Trust Code, the circuit court has subject–matter jurisdiction to hear "proceedings . . . brought by a trustee or a beneficiary concerning the administration of a trust or of other proceedings involving a trust." Ark. Code Ann. § 28-73-203 (Repl. 2012). This case does not involve the administration of a trust nor is it a proceeding involving a trust. Indeed, no trust has even been established. The circuit court can't create the thing that would establish its jurisdiction. Rather, the Trust Code contemplates that a trust already exists before the circuit court has the power to modify the document and determine the legal relations contained therein. *E.g.*, Ark. Code Ann. § 28-73-201(c) ("A judicial proceeding involving

---

[2] The majority claims, presumably upon counsel's representations at the hearing, that Corn had not yet received any funds in his capacity as a beneficiary designee. This has no impact on the analysis because Corn legally owned those funds regardless. The proceeds from Yelvington's life insurance policy and the assets in Yelvington's bank account were nonprobate assets. 4 Arkansas Probate & Estate Admin. § 1:15. Accordingly, these assets "pass outside of the probate estate at the death of the decedent." *Id.* § 1:6. Corn owns and exclusively controls the assets going into the trust.

a trust may . . . includ[e] a request for instructions and an action to declare rights."); Ark. Code Ann. § 28-73-410(b) ("A proceeding to approve or disapprove a proposed modification or termination . . . may be commenced by a trust or beneficiary, and a proceeding to approve or disapprove a proposed modification or termination may be commenced by the settlor."). The Trust Code has no mechanism for the circuit court to settle a trust upon petition from a potential beneficiary.

In some circumstances, the Arkansas Code allows a circuit court to establish a trust. For example, it is the duty of the circuit court to appoint a trustee for a person imprisoned in another country or who is otherwise missing. Ark. Code Ann. § 28-72-102(a). This section also provides the initiation procedure for this type of trust. Ark. Code Ann. § 28-72-102(b). But no corresponding statute provides for the circuit court to settle a special-needs trust for the purpose of shielding a person's assets from Medicaid. This why the majority's citation to cases from New York are unpersuasive: New York law provides that a court can establish a special-needs trust in the first instance under a state statute that specifically authorizes such a procedure. *See Mental Hygiene Legal Serv. ex rel. Thomas C. v. Bishop*, 748 N.Y.S.2d 617 (N.Y. App. Div. 2002); N.Y. Est. Powers & Trusts Law § 7-1.12 (McKinney).

To conclude, the majority needlessly departs from our trust code and creates unnecessary precedent in this one-party case. I would affirm the circuit court: though it stated the wrong reason, it reached the right result when it denied Corn's petition. This is not a novel disposition, as we have affirmed under this doctrine for at least a century. *See Miller v. Miller*, 130 Ark. 28, 33, 195 S. W. 1071, 1073 (1917) (quoting *Dawkins v. Petteys*, 121 Ark.

14

498, 181 S. W. 901 ("The ultimate fact to be determined on appeal in chancery cases is not whether the chancellor pursued correct and logical mental processes in reaching his conclusion, but whether  the conclusion itself is correct.")).

BAKER and HART, JJ., join.

*Winburn, Mano, Schrader & Shram*, by: *Rebecca H. Winburn* and *John G. Shram*; and *Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellant.

No response.