PAUL E. DANIELSON, Associate Justice | Appellant James S. Corn, age fifty-three, brings this appeal from an order of the Pulaski County Circuit Court denying Corn’s petition to establish a special-needs trust- pursuant to 42 U.S.C. §' 1396p(d)(4)(A). Corn is disabled because of a head injury from which he suffers short-term memory loss. Because of the severity of his injury, he receives Social Security Disability (SSD)' and Supplemental Security Income (SSI). Corn’s eligibility- makes him automatically eligible for Medicaid. However, SSI has an . asset test which states that Corn would become ineligible if he were to have assets of more than $2,000. Because of this, Corn’s partner, Ms. Yelvington, now deceased, established a special-needs trust for him. Yelvington also designated Corn as a beneficiary on life insurance policies and her bank accounts. There is approximately $260,000 that was not transferred into the special-needs trust created by Yelving-ton, and because Com is designated as the beneficiary on these assets, bthey would pass directly to Corn upon Yelvington’s death. Because these- assets would- be passing directly to Corn rather than through a special-needs trust, Corn would be ineligible to receive SSI benefits. In order to prevent this, Corn attempted to create a trust pursuant to 42 U.S.C. § 1396p(d)(4)(A) (hereinafter “D4A trust”). This statute provides that assets do not count toward the asset limit if the assets are in a trust that contain[s] the assets, of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter. 42 U.S.C § 1396p(d)(4)(A). On April 10, 2015,. Corn filed a “Petition to Establish.a 42 U.S.C. § 1396p(d)(4)(A) Special Needs Trust” for his benefit. In that petition, Corn stated that he is entitled, pursuant to the statute, to use a safe-harbor special-needs trust to hold his inherited monies to preserve his eligibility for public benefits. Corn attached a copy of the proposed “James Corn D(4)(A) Special Needs Trust” to the petition and stated that the trust meets all of the criteria for the establishment of a (D)(4)(A) trust, including (1) that Corn is under the age of 65; (2) that he is disabled pursuant to the provisions of the Social Security Act; (3) that the trust will be funded with Corn’s assets; (4) that Corn is the sole beneficiary of the trust; (5) that the trust will be established by the court as allowed under the statute; (6) that the trust contains the requisite payback language to the State of Arkansas for benefits paid for the primary beneficiary’s care under the Medicaid program; (7) that the trust is irrevocable; (8) that the | ¡¡trust contains a spendthrift clause; and (9) that Corn cannot direct the trustee to use trust principal or income for his support and maintenance. “Schedule A” of the special-needs trust includes approximately $260,000 in assets from Yelv-ington’s life insurance policies and bank accounts on which Corn is the designated beneficiary. A hearing was held on June 2, 2015, in the Pulaski County Circuit Court. At the time of the hearing, Yelvington had passed away and her estate was in probate. Corn had not yet received any funds from her estate or from her beneficiary designations. At the hearing, Corn’s attorney stated that when Yelvington set up the special-heeds trust for Corn, she unintentionally left out a number of assets that would pass directly to Corn. The circuit court asked counsel for Com what other assets were in the special-needs trust set up by Yelvington. Counsel for Corn stated that he was unprepared at that time to share a report of the assets passing through Yelvington’s trust administration or probate. The circuit court then stated as follows: I can tell you that what my concern has started to be in these cases. You know, , I’ve had some of these where there’s $40,000 in the special needs trust;, I’ve . had some where there’s $30,000; I’ve had others that had already been set up prior to me seeing them. But I’m starting to have a public policy issue.with them because people out here who are making $30,000 a year and paying taxes, their tax money is going to help provide these benefits that your client is. trying to keep. And, at the same time, if I’m helping. him protect 200 — -something thousand dollars over here so that he can keep those benefits that poor people are having to pay for, that becomes an issue for me. When counsel for Corn, asked the circuit court if they needed to get a continuance, the circuit court stated, Well, what I’m going to do — we’re here today. We had it on the docket. And most of what I know I’ve had to kind of drag out of you today... And if this is all you’re | ¿presenting, I’m going to deny it. And I’m going to let you file your motion for reconsideration within ten day[s] ... [a]nd show me what you have. At the conclusion of the hearing the circuit court stated, “I’m going to deny it. You all need to make your case for it in, the motion for reconsideration.” The circuit court entered the order denying Corn’s petition that same day. On June 11, 2015,' Corn filed a motion for reconsideration and brief in support.' The motion for reconsideration was denied on July 10, 2015. In its order denying Corn’s motion for reconsideration, the circuit court found that the establishment of the .trust would be against Arkansas public policy and that there was insufficient evidence presented to support that a special-needs trust should be established. On August 7, 2015, Corn filed a timely notice of appeal. In this casé, the circuit court ruled that the D4A trust was against public policy of the State of Arkansas. We disagree. D4A trusts are clearly provided for by 42 U.S.C. § 1396p(d)(4)(A), and although a state’s participation in the federal Medicaid program is voluntary, states that choose to participate must comply with the requirements of the federal Medicaid statute. Ark. Med. Soc’y, Inc. v. Reynolds, 6 F.3d 519 (8th Cir.1993). Therefore, the Arkansas Department of Human Services, in its Medical Services Policy Manual, has issued rules that comply with 42 U.S.C. § 1396p(d)(4)(A). Rule 016.20.1-H of the policy manual states: TRUSTS ESTABLISHED 8/11/93 AND LATER 1. General Provisions [[Image here]] lfi4. Trusts Not Considered an Available Resource A trust will not be considered an available resource to an individual if it meets the criteria of one of the 3 trusts described below: a. A trust containing the resources of an individual under age 65 who is disabled, as determined by SSI or MRT, and which has been established for the benefit of the individual by a parent, grandparent, legal guardian of the individual, or a court, if the state will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual. While this court has not before addressed the establishment of D4A trusts, Corn points to other jurisdictions that have held that the creation of D4A trusts actually serves public policy considerations. Specifically, Corn cites to State v. Hammans, 870 N.E.2d 1071 (Ind.Ct.App.2007). In Hammans, the Indiana Court of Appeals observed that the disability trust at issue was drafted to comply with section 1396p(d)(4)(A) and stated that we recognize that the exception created by 42 U.S.C. § 1396p(d)(4)(A) serves important public policy considerations; namely, that reimbursing the State for funds it has expended through Medicaid for medical assistance increases the availability of funds for the future medical assistance to other needy persons. Id. at 1082 (citing Estate of Jobe, 590 N.W.2d 162 (Minn.Ct.App.1999)). Corn also relies on Matter of Gillette, 195 Misc.2d 89, 756 N.Y.S.2d 835 (N.Y.Sup.Ct.2003), which involves facts similar to the case before us. In Gillette, a disabled person petitioned the court for the establishment of a special-needs trust for his own benefit because his parents and grandparents were deceased, and although he was disabled, he was not in need of a guardian. The court stated, [T]here is no logical reason that the disabled person cannot be the grantor and petition the court to establish the trust, as long as the trust has not been signed by the trustee and funded before . submission to the court. If all the requirements to create a trust | fihave not been completed, the trust is not established. Even though the grantor is the disabled person, the court can entertain the petition and establish the trust by court order, so long as the creation of the trust has not been completed before the petition is submitted to the court. In this way, the expense of a guardianship proceeding can be avoided for a person who is disabled, but not .otherwise in need of a guardian. Id. at 838. Similarly, in In re Woolworth, 76 A.D.3d 160, 903 N.Y.S.2d 218 (2010), a disabled petitioner, as administratrix of the estate of her husband, petitioned to establish a special-needs trust to be funded with her entire share of the proceeds she received ($283,438.30) as a result of a settlement in a wrongful-death action on behalf of her deceased husband. Petitioner was disabled and under the age of 65 but did not have a parent, grandparent, or guardian who could establish a D4A trust on her behalf. Id. The Surrogate’s Court ruled that it would only allow the special-needs trust to be funded with $100,000 of the petitioner’s share and that a provision would be added for an annual accounting to ensure that the amount did not go over the $100,000 limit. Id. The New York Supreme Court, Appellate Division, reversed, holding that the Surrogate abused its discretion in conditioning its approval of the special-needs trust upon the petitioner’s agreement to limit the funding to $100,000: In order to further Medicaid’s purpose of providing medical assistance to needy persons, the State agrees to continue paying Medicaid costs — in instances where it would otherwise be relieved of its obligation — in exchange for the possibility of reimbursement upon the recipi- • ent’s death. Id. at 218 (quoting Matter of Abraham XX, 11 N.Y.3d 429, 871 N.Y.S.2d 599, 900 N.E.2d 136, 140 (2008)) (emphasis in original). 17Here, the circuit court relied on four cases to support its ruling that Corn’s proposed D4A trust is against public policy: Thomas v. Ark Dep’t of Human Sevs., 319 Ark. 782, 894 S.W.2d 584 (1995); Ark. Dep’t of Human Servs, v. Wilson, 323 Ark. 151, 913 S.W.2d.783 (1996); Ark Dep’t of Human Servs, v. Watters, 315 Ark. 204, 866 S.W.2d 823 (1993); and In re. Ruby G. Owen Trust, 2012- Ark. App. 381, 418 S.W.3d 421. These cases applied Act 1228 of 1993, codified at Arkansas Code Annotated section 28-69-102 (Supp. 1993), in holding that “[t]he public policy behind the Act is absolutely beyond dispute — trusts may not be created and used as devices to sequester resources for the purpose of qualifying individuals otherwise ineligible for Medicaid assistance.” See Thomas, 319 Ark. at 789, 894 S.W.2d at 588 (citing Ark.Code Ann. § 28-69-102(b) (Supp. 1993)); Walters, 315 Ark. 204, 866 S.W.2d 823. The difference between the trusts in these cases and the case at hand is that those cases did not include payback provisions to the State. They simply were not D4A trusts. D4A trusts have a statutory requirement that the state be reimbursed for any medical expenditures upon the death of the disabled beneficiary. 42 U.S.C. § 1396p(d)(4)(A). D4A trusts are provided -for by federal statute and by the rules of the Arkansas Department of Human Services policy manual. See Arkansas’s Medical Services Policy Manual Rule 016.20.1-H. Furthermore, we see no logical reason why a disabled person cannot be the grantor and petition the court to establish the trust as long as the requirements of 42 U.S.C. § 1396p(d)(4)(A) have been met. Accordingly, we hold that the circuit court erred in finding that the establishment of a D4A trust in this case would be against Arkansas public policy. | «Corn’s second point on appeal is that the circuit court erred in finding that there was insufficient evidence to support the establishment of a D4A trust. At the hearing, Corn testified to his disability, stating that he had a head injury, which caused' memory loss, and that he has been determined disabled by the Social Security Administration and receives SSD and SSI. The circuit court stated at the hearing that “there’s no disability, no guardianship, or anything like that.” The court also asked about the assets of Yelvington’s trust, which counsel for Corn said he did not have at the time because Corn was asking that only the assets outside of the trust established by Yelvington be put in the D4A trust. Counsel presented “Schedule A” attached to the proposed special-needs trust. Schedule A is a list of assets Corn proposed to place into the requested D4A trust. At the conclusion of the hearing, after denying Corn’s petition, the circuit court told Corn’s counsel that they could file a motion for reconsideration within ten days “[a]nd show me what you have” and that counsel needed to “make [their] case for it in the motion for reconsideration.” In his motion for reconsideration and brief in support, Corn attached letters from the- Social Security. Administration regarding his -SSI payments, explained the factors that must be met in order to qualify for a D4A trust, and presented his argument that he had met those requirements. In its order denying Corn’s motion for reconsideration, the circuit court stated that, while Com testified that he was- disabled, “no one presented written substantiation that [Corn] was disabled or receiving Social Security benefits.” We find that through his testimony at the hearing and by attaching letters from the Social Security Administration to his motion for reconsideration, Corn provided the circuit court with sufficient evidence of |ahis disability. Therefore, we hold that the circuit court erred in finding that there was insufficient evidence that Com was disabled. In: conclusion, we hold that the circuit court erred in rulihg that the establishment of a D4A trust is against Arkansas public policy and that the circuit court erred in finding that there was insufficient evidence of Corn’s disability. We reverse the circuit court’s .order and remand this case for a determination of whether the proposed D4A trust meets the requirements set forth in 42 U.S.C. § 1396p(d)(4)(A). Reversed and remanded. Baker, Hart, and Wood, JJ., dissent.